[No. D004228. Fourth Dist., Div. One. Mar. 30, 1987.]

MICHAEL McCAULEY, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent.

COUNSEL

Miller & Frisch, Morton Frisch, Jeffrey Glasser and Gregory A. Maccasone for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson, Senior Chief Deputy City Attorney, Eugene P. Gordon, Chief Deputy City Attorney, and Leslie J. Girard, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**WORK, J.**—Michael McCauley appeals a defense judgment on his complaint alleging the City of San Diego (City) owned and maintained a "dangerous condition" of property which proximately caused his injuries within the meaning of Government Code section 835.[1] He contends the trial court erred in concluding the City was statutorily immune from liability for his injuries caused by a dangerous natural condition located on unimproved public property pursuant to sections 831.2 and 831.4, in part because he alleges the City has assumed "risk management" of the unimproved property by posting warning signs which proved to be inadequate. In particular, he claims the court failed to correctly interpret and apply the legal holding of *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73], to the facts of this case. He further urges the trial court erred in failing to find the City had an independent duty to warn of known dangerous natural conditions pursuant to section 835 despite the immunity provisions of sections 831.2 and 831.4 where such negligence is an independent and separate cause for the accident. For the reasons which follow, we conclude the trial court's action is consistent with the holding of *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d 882. Further, the court properly found the City is immune under section 831.2 and owed no independent duty to warn of the known dangerous natural condition of its unimproved property. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 1980, McCauley celebrated his 21st birthday with a group of friends and consumed a substantial quantity of alcohol during the day and evening hours. The group continued drinking at the cliffs overhanging Black's Beach in the Torrey Pines Recreational Area, where their car was parked near the end of the paved road entering the dark recreational area. Soon, the apparently intoxicated McCauley stumbled away. Several hours later, he was found lying in Flying Dutchman Gulch, approximately 200 feet down the cliff immediately above the beach. The approximate area from which McCauley fell was located about 400 yards from where he and his

---

[1]All statutory references are to the Government Code.

friends parked.[2] His blood alcohol level at 7:15 a.m. was .06 percent[3] As a result of the fall, McCauley was in a coma for over three and one-half months and suffered substantial physical injuries, including traumatic amnesia which prevented him from supplying any specific details regarding the accident or events before it.

The trial was bifurcated and the issues of liability and contributory negligence were tried by the court. Following testimony and two judicial views, the court expressly found the cliffs at Torrey Pines Recreational Area constitute a dangerous condition of public property within the meaning of sections 835 and 830 and were a concurring legal cause of McCauley's injuries; the approximate area on the cliffs from which McCauley fell was unimproved public property within the meaning of section 831.2, as the record includes no credible evidence connecting any improvement to public property with McCauley's accident and resulting damages; McCauley gained access to the cliff face on the westerly portion of the recreational area by use of an unpaved trail and apparently fell from an area known as Goat Trail making applicable the immunity provision of section 831.4, freeing the City of any liability for the accident and resultant damages; and the City had no independent duty to warn McCauley at the time of his accident and damages. The trial court further found no evidence that McCauley relied on, or was misled by, any action or omission of the City; no evidence supporting a conclusion the placement of posts with chains and signs at the area of the accident created a duty from the City to McCauley or that he saw and relied upon them; and no evidence the City conduct in any way caused McCauley's accident or the resulting damages.

---

[2]The testimony was in conflict regarding the precise location from which McCauley fell: Lt. Albert Bruton, area supervisor for the City Lifeguard Service, testified McCauley fell from a portion at the beginning of Goat Trail in an area where three posts and an attached chain were located, apparently installed by the State of California before the property was acquired by the City. However, the City had attached a "Caution, Slippery Trail" sign to the most southerly post. Plaintiff's accident reconstruction expert testified, however, it was unlikely McCauley fell from that area, but rather more likely he wandered to the north off Goat Trail, then westerly onto the false trail, falling into Flying Dutchman Gulch. He further testified there was no way to determine the precise route McCauley took from the parked car culminating in his fall.

[3]In light of the hour of the blood alcohol test, the 4,000 ccs of salt water solution given McCauley and the surrounding circumstances of his age, weight and amount of alcohol consumed ending at midnight, expert testimony revealed his blood alcohol with dilution ranged from .157 to .06 from 12:30 a.m to 7:15 a.m. Without dilution, however, expert testimony revealed it ranged from .188 to .088 between 12:30 a.m. and 7:15 a.m. Expert testimony further revealed McCauley had significant impairment, presumably both mentally as to comprehension and physically as to coordinated motor behavior, as a result of his intoxication.

### THE TRIAL COURT CORRECTLY CONCLUDED THE CITY
### WAS SHIELDED BY THE ABSOLUTE IMMUNITY OF SECTION 831.2[4]

■ McCauley's primary contention is that the trial court erred in concluding the immunity set forth in section 831.2 shielded the City here and thus incorrectly applied the holding of *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d 882.

■ Section 831.2[5] codifies an absolute immunity for public entities and their employees for injuries caused by *natural* conditions of any *unimproved* public property. (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 832-834 [196 Cal.Rptr. 38, 670 P.2d 1121]; *Kuykendall* v. *State of California* (1986) 178 Cal.App.3d 563, 565 [223 Cal.Rptr. 763]; *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at p. 885.) The provision was enacted to relieve public entities of the burden and expense of putting natural unimproved property in a safe condition and defending claims for injuries flowing from their use, thus guaranteeing public access and use of such unimproved, publicly held property. (*Milligan* v. *City of Laguna Beach, supra,* 34 Cal.3d at p. 833; *Kuykendall* v. *State of California, supra,* 178 Cal.App.3d at p. 565; *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at p. 886; *Keyes* v. *Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 889 [180 Cal.Rptr. 586]; Sen. Legis. Com. to § 831.2.) Thus, the section is designed to address the problem of limited availability of recreational facilities where the public demand is greater than the finite supply of such natural recreational resources. (*Keyes* v. *Santa Clara Valley Water Dist.. supra,* 128 Cal.App.3d at p. 889.)

Before *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d 882, the case precedent construing section 831.2 was predictably confined to whether an evidentiary record supported the trial court's determination the publicly held property remained unimproved in character (see, e.g., *Rendak* v. *State of California* (1971) 18 Cal.App.3d 286 [95 Cal.Rptr. 665]; *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926 [125 Cal.Rptr. 586]), whether an artificial body of water could beget a "natural" condition (see *Keyes* v. *Santa Clara Valley Water Dist., supra,* 128 Cal.App.3d 882; *Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586 [123 Cal.Rptr. 442]; see also *County of Sacramento* v. *Superior Court* (1979) 89 Cal.App.3d 215 [152 Cal.Rptr. 391]), or whether the record supported a conclusion an apparently natural dangerous

---

[4]Because we conclude the City was shielded by the absolute immunity of section 831.2, we need not address whether the trial court properly determined it was also protected by the immunity set forth in section 831.4.

[5]Section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

condition was, in fact, not natural in character, but rather artificial and manmade, the result of an improvement to the real property by the governing public entity (*Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338]; but see *Fuller* v. *State of California, supra,* 51 Cal.App.3d 926). However, in the pleading case of *Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d 882, the court faced an issue of first impression of whether the absolute immunity of section 831.2 shielded the City from liability *as a matter of law at the demurrer stage* where the complaint alleged an essentially hybrid dangerous condition relating to unimproved public property, partially natural and partially artificial in character, the result of a combination of a natural defect of the real property and the relied-upon *conduct* of the governing public entity.

In *Gonzales,* the plaintiffs alleged the City voluntarily provided lifeguard and police protection to a beach and surf area it owned and controlled, and by providing these services had assumed the obligation to warn the general public of unsafe surf conditions along the beach by posting areas as unsafe for swimming when such conditions exist and patrolling and providing lifeguard services to protect beach users and assist those in need of rescue. The complaint alleged the decedent entered the surf on a summer afternoon believing the absence of posted warnings and any police or lifeguard patrols indicated the area was safe for public swimming. However, there was a riptide condition and she drowned. The plaintiffs alleged the riptide condition had existed in the surf for a period of time sufficient for the City to have taken protective measures to warn beach users from entering the surf and, although it knew or should have known of the condition, it compounded the dangerous condition by negligently failing to post any warning, by not marking the beach and surf areas as unsafe for public swimming and by not adequately patrolling the area or having sufficient lifeguard or police service present at the time of the incident. Consequently, the heirs alleged their mother's death was proximately caused by the City's negligence in creating a dangerous and defective condition by failing to warn of the riptide within the surf. The City asserted absolute immunity under section 831.2. In holding that immunity provision inapplicable, the court of appeal explained plaintiffs alleged a hybrid dangerous condition, partially natural and partially artificial in character, the result of a combination of a natural dangerous riptide condition and the City's voluntarily providing lifeguard service, inducing public reliance on that protective service, and performing its assumed service negligently by failing to warn of the known, hazardous, natural condition. ■ In other words, once a public entity voluntarily provides a protective service for certain members of the public, inducing their reliance on the non-negligent performance of that service, the public entity will not be shielded from potential liability by section 831.2 where the dangerous character of the natural condition is compounded by the

public entity's negligent performance of the voluntarily assumed protective service. (*Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at pp. 885-887; see also *Winterburn* v. *City of Pomona* (1986) 186 Cal.App.3d 878, 882 [231 Cal.Rptr. 105].)

 McCauley contends the City's signage warning of false and slippery trails along the cliffs constituted an ineffective and unprofessional attempt to warn the public of the dangerous nature of the cliffs.[6] Thus, by having attempted to provide such warnings, McCauley asserts the City should be held responsible for its negligence in failing to warn properly. In other words, he claims the City, as in *Gonzales,* assumed the responsibility for risk management in the Torrey Pines recreational area by its signage program, the extent and nature of which was insufficient to warn or protect the public from the dangerous conditions of the eroding cliffs.

The facts underlying *Gonzales* are clearly distinguishable from those we confront here. The protective services voluntarily assumed by the City in *Gonzales* were active and ongoing and of the character to induce reasonable public reliance. In comparison here, the passive nature of a series of warning signs is designed simply to warn the people to take care if they assume the risk in using the unimproved public property in its natural condition. In

---

[6]The record establishes a signage program specifically warning of the dangerous condition of the cliffs as including (1) a sign reading "Warning, Hazardous Cliffs, Trails, Rip Currents," approximately 23 inches x 46 inches in overall dimensions with "Warning" written in 6-inch high letters and the remaining words in 4-inch letters, unlit and unreflectorized, located approximately 400 yards from the edge of the cliffs, just beyond the end of Torrey Pines Scenic Drive; (2) a series of posts with signs reading, "Danger, False Trail," depicting in red the picture of a person falling with debris, approximately 12 inches x 24 inches in dimensions, unlit and located on the rim of the cliffs running north/south facing east; and, (3) a sign reading "Caution, Slippery Trail," approximately 12 inches x 24 inches in dimension with "Caution" written in 4-inch letters and "Slippery Trail" in 3-inch letters, located on the most southerly post of 3 posts connected by a chain, approximately 6 feet apart situated at the beginning of Goat Trail on the cliff rim.

McCauley's expert testified the first warning sign was located too far back from Torrey Pines Scenic Drive in the parking area to be seen, was neither illuminated nor reflectorized, and was too far from the cliffs to provide an effective warning; only a few of the false trails were marked with signs, perhaps creating a false belief they were the only false trails; the false trail signs were neither artificially lit nor reflectorized; the false trail signs simply do not adequately warn of the dangers present within the area; some of the false trail signs were improperly placed making it difficult to know to which trail the sign referred; and the three posts and chain, especially at night, would tend to direct a person away from Goat Trail and onto the false trail to the Flying Dutchman Gully. He testified the City could have pursued four courses of conduct which would have been effective in protecting the public from dangerous conditions of the cliff, including: (1) placement of a barrier fence or railing in the area of the cliff edge; (2) the use of signs prepared according to recognized safety standards, employing international symbols and using the actual language prohibiting pedestrian traffic on the false trail; (3) posting Goat Trail as the only recognized access along the cliff face down to the beach and warning it should be used only by experienced climbers; and, (4) simply fencing the entrance and closing the park at night.

*Gonzales,* once the City voluntarily assumed the duty of providing lifeguard services, it induced public reliance upon the expertise of those who provided the lifeguard service in detecting and warning of the existence of dangerous rip currents, latent in character to the majority of the unknowing, swimming public. However, here are not hidden dangerous conditions, but rather an undisguised cliff openly dangerous to all. Granted, McCauley can argue the condition became hidden and latent in the fog and darkness of the evening in question. However, where the City cannot be held liable for failing to post warnings on the specific, unimproved realty (see *infra*), we cannot imagine how the City would waive its right to immunity at night when its signage is not visable. Indeed, *Gonzales* only stands for the proposition section 831.2 will not cloak a public entity with immunity *when its own conduct is partially responsible for inducing a person to be victimized by a dangerous condition of the nature of a hidden trap.*[7]

Moreover, *Gonzales* and this case are procedurally distinguishable. *Gonzales* was an appeal from a demurrer sustained without leave to amend, where this court held the complaint stated a cause of action for a dangerous condition within the meaning of sections 830 and 835, not covered by the immunity of section 831.2. Here, the case went to trial and the court expressly found the City had not adopted or elected to provide protective services within the meaning of *Gonzales* so as to transmute the dangerous natural condition into a hybrid one. Additionally, in *Gonzales* the heirs adequately alleged public reliance and specifically the decedent's reliance on the City's non-negligent performance of the voluntarily assumed protective service. The role of reliance within *Gonzales* is significant, for absent reliance the City's conduct would not have been an allegedly independent, contributing and concurring cause of the decedent's drowning. Consequently, unlike *Gonzales* where reliance had been adequately alleged to survive a demurrer, the trial court here found after trial there was no evidence of reliance by

---

[7]We note that section 831.2, as originally proposed by the California Law Revision Committee, limited the breadth of this immunity by subjecting a public entity to liability for injury proximately caused by a dangerous condition which would not be reasonably apparent to and anticipated by an individual using the property with due care and the public entity or its employee had actual knowledge of the condition a sufficient time before injury to have taken protective measures against the dangerous condition. (4 Cal. Law Revision Com. Rep. (1963) p. 852.) As evident from the language of enacted section 831.2, this exception was expressly rejected. Consequently, the Commission would have permitted liability if natural conditions on unimproved property amounted to a hidden trap known to the public entity. However, by rejecting that qualification, the Legislature was not declaring that a governmental entity would be cloaked with the immunity set forth in section 831.2 where it voluntarily assumes a protective service inducing public reliance and through the negligent performance of that protective service concurrently causes a member of the public to be victimized by a dangerous, latent, and natural condition, as in *Gonzales*. Rather, where a public entity's conduct actively increases the degree of dangerousness of a natural condition, section 831.2 immunity is not available.

McCauley on any actions of the City or that he was misled in any manner by the City's conduct. A review of the record supports this conclusion.

Similarly, in *Eben* v. *State of California* (1982) 130 Cal.App.3d 416 [181 Cal.Rptr. 714], plaintiff fell and struck a submerged rock while waterskiing in a federal reservoir leased to the state for surface recreational purposes. On appeal, the court held plaintiff's action should have been disposed of as a matter of law by nonsuit based on the immunity provided by section 831.2. The court rejected not only plaintiff's argument that placing warning buoys improved the property so as to preclude immunity, but also that placing warning buoys and designating certain areas as unsafe for waterskiing created a false sense of security that skiing was safe where plaintiff was injured. In rejecting the former argument, the court concluded the nature of the warning buoy program was insufficient to justify the conclusion the public entity had assumed the responsibility for reasonable risk management in the area. To the latter argument, the court explained: ". . . we point out the record is devoid of any evidence that Mr. Cox was in any way misled as to the nature of the area he had selected to teach plaintiff how to ski. Cox was an experienced boater and skier and he obviously knew, as would any reasonable person, of the presence of rocks along the shoreline. There is no evidence that the State caused the boating public to believe that the East Fine Gold Creek shoreline was rock free. Although the State had a buoy program to mark obstacles occurring where the boating public would not anticipate them and set speed limits in some areas of the lake for benefit of swimmers and fishermen, it cannot be said the State created the illusion it was safe to travel at high speeds within 10, 15 or indeed 30 feet from the shoreline. As the State points out, the site of plaintiff's accident was simply what it appeared to be; 'a rocky, unrelentingly hard granite embankment.' " (*Eben* v. *State of California, supra,* 130 Cal.App.3d at pp. 423-424.)

The public policy considerations underlying the absolute immunity provided by section 831.2 support our conclusion the signage program is neither an improvement precluding immunity (*id.* at pp. 423-425) nor a voluntary assumption of a protective service in face of a dangerous natural condition so as to moot the underlying intent of section 831.2 of freeing the public entity from the duty of performing the protective service in the first place. (*Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at pp. 886-887.) Mindful the City could have avoided any liability under section 831.2 by simply not posting any warning signs, we believe public policy is promoted by the minimally burdensome and passive intervention of sign placement so long as the public entity's conduct does not amount to negligence in creating or exacerbating the degree of danger normally associated with a natural condition. Consequently, we believe it fosters the legislative purpose of section 831.2 to allow public entities to post warnings of purely natural

dangerous conditions on unimproved public property, without jeopardizing their section 831.2 immunity. A warning-signage program which does not contribute to the dangerousness of a natural condition constitutes a reasonable middle approach for a public entity to pursue, guaranteeing the retention of the cloak of immunity while promoting public safety by encouraging the governmental entity to warn the using public of the existence of known dangerous natural conditions. The record here does not justify the conclusion the City had voluntarily assumed the responsibility for reasonable risk management within the unimproved area.

### THE CITY HAD NO INDEPENDENT DUTY TO WARN OF THE DANGEROUS NATURAL CONDITION OF THE CLIFFS

■ McCauley meritlessly contends that even if the City is cloaked with immunity pursuant to section 831.2, it has an independent duty pursuant to section 835 to warn of a dangerous condition of its property even if the immunity provisions do not require the City to correct the dangerous condition.

■ Preliminarily, "[s]ection 815 establishes sovereign immunity in this state except as provided in the Tort Claims Act or other statute. [Citations.]" (*Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at p. 887, fn. omitted; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].) However, the enactment of the Tort Claims Act has not altered the basic premise in governmental tort cases that "the rule is liability, immunity is the exception." Consequently, "courts should not casually decree governmental immunity" (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352]); for, "[u]nless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail" (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93]). (See *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 792-793 [221 Cal.Rptr. 840, 710 P.2d 907]; *Milligan* v. *City of Laguna Beach, supra,* 34 Cal.3d at p. 832, fn. 2; *Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 435-436 [99 Cal.Rptr. 145, 491 P.2d 1121].) However, ". . . the intent of the act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Williams* v. *Horvath, supra,* 16 Cal.3d at p. 838.) Accordingly, "[g]overnmental monetary liability in tort in this state is exclusively statutory in origin." (*Morris* v. *State of California* (1979) 89 Cal.App.3d 962, 964 [153 Cal.Rptr. 117].)

Regarding governmental entity liability for a dangerous condition on its property, section 835 provides: "*Except as provided by statute,* a public entity

is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably forseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Italics added.)

 We believe it is patently clear from the emphasized introductory phrase to section 835, the absolute nature of the immunity provided by section 831.2 precludes the imposition on the City of a duty to warn of dangerous natural conditions on unimproved property. Such construction is compelled by the established statutory rules of interpretation which require: "[s]ignificance, if possible, . . . be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose, as 'the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' " (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722], quoting *Moyer* v. *Workman's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

 Moreover, as already explained, the legislative history preceding the enactment of section 831.2 reveals the Law Revision Commission recommended not only limiting immunity to injuries caused by natural conditions of bodies of water and water courses sustained by individuals using the property for purposes not intended by the public entity, but also permitting liability for natural conditions on these properties where they amounted to a hidden trap known to the entity. After the Senate expanded the immunity to cover natural conditions of "any unimproved public property," it rejected these two qualifications on immunity leaving the provision in its current form. (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) appen., pp. 638-639.) Consequently, the Legislature intended to provide immunity where the public entity had knowledge of a dangerous condition which amounted to a hidden trap. A fortiori, they intended to provide immunity where the natural condition was not latent, but patent, in character. Consequently, a duty to warn of a known dangerous, purely natural condition is inconsistent with the absolute immunity provided by section 831.2.

McCauley's reliance on *Cameron v. State of California* (1972) 7 Cal.3d 318, 327-329 [102 Cal.Rptr. 305, 497 P.2d 777], and *Flournoy v. State of California* (1969) 275 Cal.App.2d 806, 811 [80 Cal.Rptr. 485], is misplaced. *Cameron,* discussing and citing *Flournoy* with approval, stands for the proposition that: ". . . where the state is immune from liability for injuries caused by a dangerous condition of its property because the dangerous condition was created as a result of a plan or design which conferred immunity under section 830.6, the state may nevertheless be liable for failure to warn of this dangerous condition where the failure to warn is negligent and is an independent, separate, concurring cause of the accident." (*Cameron v. State of California, supra,* 7 Cal.3d at p. 329.)

In other words, "section 830.6 must be read in conjunction with section 835 . . . ." (*Thomson v. City of Glendale* (1976) 61 Cal.App.3d 378, 386-387 [132 Cal.Rptr. 52].) In *Cameron,* both active negligence within the context of the creation of the dangerous condition and passive negligence within the context of failing to warn of the dangerous condition were alleged as independent concurring causes of the accident. So, where immunity precluded liability for the former, plaintiffs were nevertheless entitled to go to the jury on the passive negligence theory. *Cameron* and *Flournoy* are distinguishable here because the breadth of the immunity conferred by section 830.6 for design did not engulf the independent, separate, concurring cause of the passive negligence in failing to warn made actionable under section 835. Here, absent any affirmative conduct on the part of the City which contributed to the degree of dangerousness of the natural condition, the absolute immunity under section 831.2 immunizes a public entity from liability under section 835 for failing to warn of known dangerous natural conditions.

### DISPOSITION[8]

Judgment affirmed.

Kremer, P. J., and Lewis, J., concurred.

On April 28, 1987, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 24, 1987.

---

[8]In light of our disposition upholding the trial court's determination of immunity pursuant to section 831.2, we do not address the parties' remaining contentions.