[No. B020870. Second Dist., Div. One. Dec. 8, 1987.]

DAVID GEFFEN, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

## COUNSEL

Fogel, Rothschild, Feldman & Ostrov, Fogel, Feldman, Ostrov, Ringler & Klevens Larry R. Feldman and J. Clark Aristei for Plaintiff and Appellant.

Wasserman, Comden & Casselman, David B. Casselman and Elliot F. Borska for Defendant and Respondent.

## OPINION

**DEVICH, J.**—Plaintiff David Geffen appeals from the judgment entered following an order of nonsuit granted in favor of defendant County of Los Angeles (County). We affirm.

### PROCEDURAL HISTORY

On March 25, 1981, plaintiff filed a complaint for personal injury he sustained while diving into the ocean at Santa Monica Beach. County, as well as the City of Santa Monica (City) and the State of California (State), were named as defendants.

Prior to trial, the matter was ordered bifurcated on the issues of liability and damages. Plaintiff settled his action against City and State.

A jury trial commenced in March 1986. Presentation of plaintiff's case took approximately 23 court days, following which County moved for a nonsuit on the grounds plaintiff had not presented sufficient evidence that County had breached any duty of due care and County was protected by two separate statutory immunities. On April 29, 1986, the trial court granted County's motion for nonsuit and ordered the case dismissed pursuant to Code of Civil Procedure section 581c. The court did not state the basis of its ruling.

### FACTUAL BACKGROUND

Viewed in accordance with the standard applicable to review of a dismissal following nonsuit (*Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 395 [143 Cal.Rptr. 13, 572 P.2d 1155]), the record establishes that on June 7, 1980, 21-year-old plaintiff and a friend went to the beach in Santa Monica. County provided lifeguard services at the beach under a written contract with City. Plaintiff did not see any signs posted on lifeguard stations or elsewhere that gave information about ocean conditions or safe swimming practices.

After spending a couple of hours on the sand, plaintiff decided to go for a swim. He ran into the ocean until he was in "about waist deep water" and proceeded to attempt what he called a "racer's dive." Prior to taking the dive, plaintiff's course had been on a steady downward slope. In diving, plaintiff extended his arms parallel to the water and attempted to stay as close to the surface as possible rather than go downward. However, upon diving, plaintiff struck something which caused him to fracture a cervical vertebrae. The fracture caused injury to plaintiff's spinal cord that rendered

him a permanent quadriplegic. Plaintiff testified that had a sign been posted warning of the dangers of diving into the ocean, he would not have done so.

There were no witnesses to the incident. Plaintiff's theory was that he either hit a sand bar, which is generally described as an accumulation of sand that causes a raised area on the ocean floor, or that the ocean bottom was otherwise irregular. County's theory was that no significant irregularity existed and plaintiff dove downward, rolled and hit the bottom, thereby becoming the unfortunate victim of his own improper diving technique.

CONTENTIONS

■ On appeal, plaintiff contends it was error to grant County's motion for nonsuit because he had established a prima facie case that County breached a duty of care and because the statutory immunities asserted by County were inapplicable.

As discussed below, we find that one of the statutory immunities, the "natural condition" of "unimproved" property immunity of Government Code section 831.2,[1] operates as a complete bar to plaintiff's action. Accordingly, it is unnecessary to reach the other arguments plaintiff raises on appeal.

DISCUSSION

1. Introduction

■ "The liability of public entities is governed by the California Tort Claims Act (Gov. Code, § 810 et seq.). The statutory provisions of the act establish immunity from liability for certain acts or omissions of a public entity or its employees. (See Gov. Code, § 815.)" (*Hernandez* v. *Southern California Rapid Transit Dist.* (1983) 142 Cal.App.3d 1063, 1066 [191 Cal.Rptr. 436], fn. omitted, overruled on other grounds in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 790 [221 Cal.Rptr. 840, 710 P.2d 907].)

Section 815 provides: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) *The liability of a public entity* established by this part (commencing with Section 814) *is subject to any immunity of the public entity provided by statute,* including this part, and is subject to any defenses that

---

[1] All further statutory references are to the Government Code.

would be available to the public entity if it were a private person." (Italics added.)

One of the immunities to which liability is subject is embodied in section 831.2, which provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

Here, we determine that section 831.2 immunizes County from liability for plaintiff's injury. ■ In so doing, we are aware that "[c]onceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894].) ■ In this case, however, the issue of County's statutory immunity is dispositive. We therefore assume, without so deciding, that a duty of care was owed to plaintiff and pass directly to the issue of section 831.2 immunity.

2. "Natural Condition"

The primary basis upon which plaintiff attempts to avoid section 831.2 immunity is predicated on *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73]. In *Gonzales,* the Court of Appeal reversed the judgment entered after the sustaining of a demurrer without leave to amend where the plaintiffs alleged that their mother drowned in the ocean because of a riptide condition about which defendant, who assumed lifeguard duties for the beach, had failed to warn.

The *Gonzales* court turned first to a discussion of the "natural condition" immunity of section 831.2. The court assumed arguendo that the beach was "unimproved" property but found the "natural condition" requirement to be absent because the plaintiffs had alleged a "hybrid dangerous condition, partially natural and partially artificial in character, the result of a combination of a natural defect within the property and the third party conduct of [defendant]. Thus, the dangerous condition . . . arose from the existence of a natural dangerous riptide condition, plus [defendant's] voluntarily providing lifeguard service . . ., and its performing that voluntarily assumed service negligently by failing to warn of the known, hazardous, natural condition." (*Id.,* at pp. 885-886.)

We conclude that *Gonzales* represents an unwarranted curtailment of the rule of governmental tort immunity. Although its holding has been cited in

several subsequent Court of Appeal decisions (e.g., *McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981, 986-989 [235 Cal.Rptr. 732]; *Winterburn* v. *City of Pomona* (1986) 186 Cal.App.3d 878, 882 [231 Cal.Rptr. 105]; *Kuykendall* v. *State of California* (1986) 178 Cal.App.3d 563, 566 [223 Cal.Rptr. 763]), such references have consistently been in the context of distinguishing *Gonzales* rather than following it. ■ Since we are not bound by a decision of another Court of Appeal with which we disagree (see *Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1147 [209 Cal.Rptr. 890]), we decline to follow the "hybrid condition" rationale created by *Gonzales*.

Our position finds substantial support in the legislative history of section 831.2. "[S]ection 831.2, as originally proposed by the California Law Revision Committee, limited the breadth of this immunity by subjecting a public entity to liability for injury proximately caused by a dangerous condition which would not be reasonably apparent to and anticipated by an individual using the property with due care and the public entity or its employee had actual knowledge of the condition a sufficient time before injury to have taken protective measures against the dangerous condition. (4 Cal. Law Revision Com. Rep. (1963) p. 852.) As evident from the language of enacted section 831.2, this exception was expressly rejected.[2] Consequently, the Commission would have permitted liability if natural conditions on unimproved property amounted to a hidden trap known to the public entity. However, by rejecting that qualification, the Legislature was not declaring that where a governmental entity voluntarily assumes a protective service, inducing public reliance, and through the negligent performance of that protective service concurrently causes a member of the public to be

---

[2]The Law Revision Commission recommendation provided: "(a) Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any natural lake, stream, river or beach, if at the time of the injury the person who suffered the injury was not using the property for a purpose for which the public entity intended the property to be used. [¶] (b) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by such a condition if: [¶] (1) the condition is a dangerous condition that would not be reasonably apparent to, and would not be anticipated by, a person using the property with due care; and [¶] (2) the public entity or the public employee had actual knowledge of the condition a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (4 Cal. Law Revision Com. Rep. (1963) p. 852.)

"As recommended by the Law Revision Commission, [citation], this section (a) limited immunity to injuries caused by natural conditions of bodies of water and watercourses, sustained by persons using the property for purposes not intended by the entity, and (b) permitted liability if natural conditions on these properties amounted to a hidden trap known to the entity. The Senate (Senate J, Feb. 26, 1963, p. 518; Mar. 12, 1963, p. 751) expanded the immunity to cover natural conditions of 'any unimproved public property,' and later rejected the two qualifications on immunity proposed by the commission (Senate J, Mar. 19, 1963, p. 903), leaving the section in its present form." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) appen., pp. 638-639.)

victimized by a dangerous, latent, and natural condition, as in *Gonzales,* it would be cloaked with the immunity set forth in section 831.2. ■ Rather, where a public entity's conduct actively increases the degree of dangerousness of a natural condition, section 831.2 immunity is not available." (*McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d 981, 989, fn. 7.)

The *Gonzales* "hybrid condition" rationale is thus directly inconsistent with the plain meaning of the absolute immunity language embodied in section 831.2. Moreover, the *Gonzales* court imposed " 'dangerous condition' liability, under section 835, for the City's failure to warn the beach user of the 'hybrid dangerous condition.' A component of the 'hybrid dangerous condition,' however, was the City's failure to warn of the natural rip current. In other words, the City's 'failure to warn' is treated not only as the basis for 'dangerous condition' liability, but also as an integral part of the dangerous condition itself. The circularity of using the City's 'failure to warn' in two distinct capacities to establish liability completely emasculates natural condition immunity." (Comment, *Surviving the "Chubasco": Liability of California Beach Communities for Natural Conditions of Unimproved Public Property* (1986) 23 San Diego L.Rev. 723, 734, fns. omitted.)

We further note that in enacting new section 831.21 (Stats. 1987, ch. 1209),[3] the Legislature has specifically abrogated *Gonzales.* Although we do not rely upon this statute for our result since its application is prospective only, its passage is consistent with our conclusion that *Gonzales* represents an unwarranted restriction of sovereign immunity and should not be followed.

3. "Unimproved Public Property"

■ Plaintiff also asserts that even if the "hybrid condition" rationale of *Gonzales* is inapplicable, section 831.2 does not defeat his claim because the statute requires that the natural condition be on *unimproved* property and the Santa Monica beach area had "Lifeguard Headquarters Building, Lifeguard Towers, parking lots, food concessions, the promenade, the

---

[3] Section 831.21 provides: "(a) Public beaches shall be deemed to be in a natural condition and unimproved notwithstanding the provision or absence of public safety services such as lifeguards, police or sheriff patrols, medical services, fire protection services, beach cleanup services, or signs. The provisions of this section shall apply only to natural conditions of public property and shall not limit any liability or immunity that may otherwise exist pursuant to this division.

"(b) This section shall only be applicable to causes of action based upon acts or omissions occurring on or after January 1, 1988."

breakwater, the pier, signs, and the rock groin." This contention is without merit.

In *Rendak* v. *State of California* (1971) 18 Cal.App.3d 286 [95 Cal.Rptr. 665], the judgment entered following the granting of a nonsuit was affirmed based on section 831.2 immunity. The plaintiffs' decedent was killed when a portion of a cliff slipped into the ocean at Brighton Beach Park in Santa Cruz County. The plaintiffs argued that the existence of improvements in the public park negated the immunity provided by section 831.2. In rejecting this argument, the court held that "improvement of a portion of a park does not remove the immunity from the unimproved areas." (*Id.,* at p. 288.)

Similarly, in *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926 [125 Cal.Rptr. 586], section 831.2 immunity was applied where the plaintiff dove from a hazardous "Point" into the ocean approximately 3,000 feet from where a jetty and yacht harbor had been constructed causing a sand buildup resulting in shallow water. In rejecting the plaintiff's claim, the court stated: "Essentially, plaintiff would have this court rule that a condition affected in any way by human activity is not a 'natural condition.' It is not possible that in creating section 831.2 the Legislature intended such a narrow construction of the term. This court may take judicial notice that up and down the coast of California, including its bays and river mouths, the combined acts of men and of nature have caused substantial change to the coastline's condition. It cannot be said wherever such has occurred and an area of the coast is no longer in the pristine state which it was prior to the population of California, that the Legislature intended such an area to be excluded from the application of section 831.2. While each case must be decided on its own facts, it is clear that in the case at bench the additional sand did not so alter the beach as to remove it from the meaning of 'natural condition' in the section. The evidence does not show that either the City or the State by its acts participated in the sand buildup. Rather, some distance from the Point activities were undertaken which when combined with natural forces resulted in increased sand around the Point." (*Id.,* at p. 938.)[4]

In sum, the record is devoid of evidence that plaintiff's accident was caused by anything other than the "natural condition" of "unimproved" property. County's motion for nonsuit was properly granted.

[4] Plaintiff's reliance on *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338] is misplaced. In *Buchanan* the injured party introduced evidence that his bodysurfing injury occurred on a portion of a beach that had been created by the construction of a jetty, the dredging of sand from the channel of the harbor entrance adjacent to the jetty and the depositing of sand to raise the beach level by 27 feet, all of which caused a steep slope from the shoreline. (*Id.,* at pp. 224, 227.) No such evidence of manmade conditions or improvement exists in the instant case.

## DISPOSITION

The judgment is affirmed.

Hanson (Thaxton), Acting P. J., and Lucas, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 1988. Lucas, C. J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.