[No. B039011. Second Dist., Div. One. Nov. 1, 1989.]

JESSE JOSEPH MORIN, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part C.

COUNSEL

Neil C. Newson & Associates, Richard A. Morse, Gary Silverman and Marc S. Margolies for Plaintiff and Appellant.

Wasserman, Comden & Casselman, David B. Casselman, Kevin H. Park and Robert C. Powers for Defendant and Respondent.

OPINION

ORTEGA, J.—We affirm the summary judgment in favor of defendant County of Los Angeles, based upon its statutory immunity for personal injury caused by "any natural condition of any . . . beach" (Gov. Code, § 831.2),[1] and for injury arising from "hazardous recreational activities." (§ 831.7.)

### FACTUAL BACKGROUND

Plaintiff, a 16-year-old male, was injured while diving into the surf at Venice Beach on the afternoon of July 16, 1984. After arriving at the beach and speaking with relatives, plaintiff disrobed and ran 10 to 15 feet into the surf. When the water went just above his knees, plaintiff dove in with his hands extended forward, intending to make a "flat" dive. However, his head struck a hidden sandbar. His cousin pulled him out of the water, which was only ankle-deep. The impact rendered plaintiff a quadraplegic.

---

[1] All future section references are to the Government Code unless otherwise indicated.

Plaintiff's accident occurred approximately 300 feet north of the Venice pier, which also housed the nearest lifeguard station. On prior outings to Venice Beach, plaintiff observed posted signs on top of the pier prohibiting swimming within 200 feet of the pier. Plaintiff saw no other warning signs concerning sandbars, rocks, or other hazards.

## ISSUES

Plaintiff contends (1) triable issues of fact exist as to whether his injury was caused by a natural condition of unimproved public property (§ 831.2); (2) the governmental immunity for injury arising from hazardous recreational activities (§ 831.7) does not apply; and (3) he should be permitted to amend his complaint to allege his injury was not caused by a natural condition of unimproved public property.

## DISCUSSION

■ Summary judgment, a drastic procedure which denies the adverse party the right to a trial on the merits, should be granted with caution. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) Summary judgment should only be granted when the evidence in support of the moving party establishes that there is no triable issue of material fact. (Code Civ. Proc., § 437c, subd. (c).) ■ The moving party bears the burden of furnishing supporting documents to establish the adverse party's claims lack merit under any legal theory. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) ■ The court will strictly construe the moving party's affidavits, while liberally construing those of the adverse party. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) ■ Any doubt concerning the propriety of granting the motion should be resolved in favor of the adverse party. (*Ibid.*)

### A. *Natural Condition of Unimproved Property Immunity*

The trial court granted defendant's motion for summary judgment on the basis of its immunity under section 831.2, which defendant had raised as an affirmative defense in its answer to the amended complaint. That section provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." (§ 831.2.)

When originally introduced in the Legislature in 1963 as part of Senate Bill No. 42, section 831.2 only provided immunity for " '. . . an injury

caused by a natural condition of any *natural* lake, stream, river or beach, if at the time of the injury the person who suffered the injury was not using the property for a purpose for which the public entity intended the property to be used.' " (*Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586, 589 [123 Cal.Rptr. 442].) Following several amendments, the bill was enacted in its present form, which immunizes "any natural condition of *any* lake, stream, bay, river or *beach*." (§ 831.2, italics added; *Osgood* v. *County of Shasta, supra,* 50 Cal.App.3d at p. 590.) ▮ The legislative history of section 831.2 clearly demonstrates the Legislature extended immunity to not only natural bodies of water, but to any bodies of water including those that are man-made. (*Ibid.*)

Immunity under section 831.2 exists even where the public entity's nearby improvements together with natural forces add to the buildup of sand on a public beach. In *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926 [125 Cal.Rptr. 586], the 17-year-old plaintiff sustained injuries when he dove into shallow ocean water from a cliff in a state park. With respect to section 831.2, the plaintiff in *Fuller* contended the construction of the nearby Santa Cruz yacht harbor and jetty together with rip rock work altered the natural condition of the ocean floor by causing a buildup of sand on the beach and around the cliff. (*Id.* at pp. 936-938.) But the *Fuller* court rejected his assertion that the governmental entities "by its acts participated in the sand buildup." (*Id.* at p. 938.) The court concluded the accident site constituted a natural condition of unimproved public property, and attributed the sand buildup to a combination of human activity and natural forces. (*Id.* at pp. 938-939.) *Fuller* correctly rejected the plaintiff's contention that section 831.2's immunity extends only to land which has not been affected in any way by human activity. (*Id.* at p. 938; *Bartlett* v. *State of California* (1988) 199 Cal.App.3d 392, 398-399 [245 Cal.Rptr. 32].)

The *Fuller* court's analysis of section 831.2 is entirely consistent with that found in cases dealing with injuries sustained on man-made lakes (see *Osgood* v. *County of Shasta, supra,* 50 Cal.App.3d at p. 590 (affd. a judgment of dismissal after a demurrer was sustained without leave to amend based on § 831.2.'s immunity for death arising from a water skiing accident allegedly caused by the county's failure to warn of a dangerous condition of the artificial lake's shoreline); cf. *Keyes* v. *Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 887-889 [180 Cal.Rptr. 586] (revd. a judgment of dismissal and granted leave to amend despite the defect in plaintiff's complaint, because there was a reasonable possibility he could allege his injury, which was sustained while swimming and diving in a man-made lake, was caused by an artificial condition)). Immunity under section 831.2 has been upheld despite human regulation of the artificial lake's water level (*Eben* v. *State of California* (1982) 130 Cal.App.3d 416, 424-425 [181 Cal.Rptr. 714]

(revd. an order granting plaintiff's motion for new trial and directed the trial court to enter judgment for the state based on its immunity under § 831.2 for plaintiff's injury sustained upon striking a submerged rock while water skiing in an artificial lake)). And in *County of Sacramento* v. *Superior Court* (1979) 89 Cal.App.3d 215, 218 [152 Cal.Rptr. 391], the court found a snag which dislodged the plaintiff from his floating device and trapped him underwater in the American River near a county park was a natural condition of unimproved property even though the water level and flow were controlled by a dam 15 miles upstream.

The record in this case contains no evidence of human alteration at the accident site. We thus find this case presents a more compelling instance of immunity under section 831.2 than do those cases granting immunity for injuries sustained in man-made lakes (*Osgood* v. *County of Shasta, supra,* 50 Cal.App.3d 586; *Eben* v. *State of California, supra,* 130 Cal.App.3d 416) or in a lake or river where the water flow and level were manually regulated (*Eben* v. *State of California, supra,* 130 Cal.App.3d 416; *County of Sacramento* v. *Superior Court, supra,* 89 Cal.App.3d 215).

Despite or perhaps due to the absence of any human alteration at the accident site in this case, plaintiff argues for the first time on appeal that defendant "proffered *no evidence* to indicate that a beach, surrounded by numerous jetties, rock groins, a pier and a manmade underwater reef were still in their 'natural conditions' . . . and were unaltered or unimproved by Man." As did the plaintiff in *Fuller* v. *State of California, supra,* 51 Cal.App.3d 926, plaintiff here asserts these nearby improvements altered the natural flow of the waves and sand, causing the sand to build up at the site where he struck his head. Plaintiff contends a triable issue of fact thus exists as to whether his accident was caused by a natural condition of unimproved public property.

The fatal flaw in plaintiff's reasoning, however, is that section 831.2 applies to "any natural condition of any . . . beach." (§ 831.2.) Even if we assume for the purpose of discussion that these man-made improvements combined with natural forces to lower the water level at the accident site from knee-deep to ankle-deep, the sandbar nevertheless remained a natural condition of the beach. Under these facts, section 831.2's immunity applies despite any human activity which indirectly added to the sand buildup on the beach and ocean floor at Venice Beach. (*Fuller* v. *State of California, supra,* 51 Cal.App.3d at pp. 938-939.)

Plaintiff's reliance on *Buchanan* v. *City of Newport Beach* (1975) 50 Cal.App.3d 221 [123 Cal.Rptr. 338], is misplaced. There, the plaintiff sustained a broken neck while surfing when he was suddenly thrust down into

the sand by the action of the wave he was riding. The evidence showed that the accident site, known as the Wedge, had been "created by the construction of a jetty, dredging sand from the channel of the harbor entrance adjacent to the jetty, and depositing the dredged sand on what had been submerged sand spits, raising the beach level by 27 feet and causing a steep slope from the shoreline into the water. This man-made condition of the beach, plus the interaction of the ocean swells against the jetty, causing a condition described in the evidence as a 'refraction' of the waves, at times produced a dangerous surfing condition." (*Id.* at p. 224.)

After the parties in *Buchanan* rested, the trial court granted the defendant's motion for nonsuit. The appellate court reversed, finding among other things triable issues of fact as to whether the steep slope at the shore's edge and the plunging type of wave which caused the plaintiff's injury "was a known dangerous condition; was the product of an improvement of property by governmental agencies, i.e., improvement of a harbor entrance and the creation of a larger beach area; was man-made; and was not a natural condition." (*Buchanan* v. *City of Newport Beach, supra,* 50 Cal.App.3d at pp. 226-227.)

But other courts have subsequently distinguished *Buchanan* on the basis of the physical alteration at the accident site which raised the beach level by 27 feet and created a steep slope from the shoreline into the water. (*Bartlett* v. *State of California, supra,* 199 Cal.App.3d at pp. 399-400 [affdg. summary judgment for the state based on its § 831.2 immunity for plaintiff's injury suffered while riding a recreational vehicle on sand dunes at beach]; *Mercer* v. *State of California* (1987) 197 Cal.App.3d 158, 165 [242 Cal.Rptr. 701] [same]; *Eben* v. *State of California, supra,* 130 Cal.App.3d at p. 425.) As in *Bartlett, Mercer,* and *Eben,* the record in this case contains no evidence of any improvements or unnatural physical change "'. . . in the condition of the property *at the location of the injury,* which justifies the conclusion that the public entity is responsible for reasonable risk management in that area . . . .' [Citations.]" (*Eben* v. *State of California, supra,* 130 Cal.App.3d at p. 423, quoting from Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.42 5, p. 256.) The Venice pier, jetties, rock groins, and reef did not physically alter the accident site in this case, which was some distance away. For this reason, we distinguish *Buchanan*. Moreover, even if we were to assume these improvements and the forces of nature added to the buildup of sand at the accident site, section 831.2 still applies. (*Fuller* v. *State of California, supra,* 51 Cal.App.3d at pp. 938-939.)

As this court previously decided in *Geffen* v. *County of Los Angeles* (1987) 197 Cal.App.3d 188, 192-194 [242 Cal.Rptr. 492], we decline to follow the "hybrid condition" rationale created by *Gonzales* v. *City of San*

*Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73]. In opposing the motion for summary judgment below, plaintiff relied heavily upon the *Gonzales* decision, in which the plaintiffs alleged their mother drowned due to an ocean riptide condition of which the City of San Diego, who assumed lifeguard duties for the beach, had failed to warn. On appeal from the judgment entered after the sustaining of the demurrer without leave to amend, the *Gonzales* court assumed for the sake of discussion that the beach was "unimproved" property, but found it was not in its natural condition and reversed. The *Gonzales* court determined the plaintiffs had alleged a "hybrid dangerous condition, partially natural and partially artificial in character, the result of a combination of a natural defect within the property and the third party conduct of City. Thus, the dangerous condition . . . arose from the existence of a natural dangerous riptide condition, plus City's voluntarily providing lifeguard service . . . , and its performing that voluntarily assumed service negligently by failing to warn of the known, hazardous, natural condition." (*Id.* at pp. 885-886.)

But as we pointed out in *Geffen,* the legislative history of section 831.2 shows that the Legislature did not intend to impose liability " 'where a governmental entity voluntarily assumes a protective service, inducing public reliance, and through the negligent performance of that protective service concurrently causes a member of the public to be victimized by a dangerous, latent, and natural condition . . . .' " (*Geffen* v. *County of Los Angeles, supra,* 197 Cal.App.3d at pp. 193-194, quoting from *McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981, 989, fn. 7 [235 Cal.Rptr. 732])

Moreover, the Legislature has specifically abrogated *Gonzales* by enacting section 831.21 (Stats. 1987, ch. 1209, p. 4433).[2] (*Geffen* v. *County of Los Angeles, supra,* 197 Cal.App.3d at p. 194.) While that section's application is prospective only, "its passage is consistent with our conclusion that *Gonzales* represents an unwarranted restriction of sovereign immunity and should not be followed." (*Ibid.*)

Significantly, the author of *Gonzales* later limited its potential impact in *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d 981. The *McCauley* court held the city was immune under section 831.2, and had no obligation

---

[2] Section 831.21 provides: "(a) Public beaches shall be deemed to be in a natural condition and unimproved notwithstanding the provision or absence of public safety services such as lifeguards, police or sheriff patrols, medical services, fire protection services, beach cleanup services, or signs. The provisions of this section shall apply only to natural conditions of public property and shall not limit any liability or immunity that may otherwise exist pursuant to this division. [¶] (b) This section shall only be applicable to causes of action based upon acts or omissions occurring on or after January 1, 1988."

to warn or to protect against injuries sustained by a plaintiff who drank alcoholic beverages, wandered onto a trail over a cliff, and fell 200 feet to the beach below. Although warning signs had been posted in the vicinity, the *McCauley* court "declined to draw the inference that it drew in *Gonzales,* that the *absence* of such a sign where plaintiff fell somehow abrogated the City's immunity by creating a hybrid condition—natural, unimproved, but lacking a sign though signs were provided elsewhere." (*City of Santa Cruz* v. *Superior Court* (*Magana*) (1988) 198 Cal.App.3d 999, 1005 [244 Cal.Rptr. 105].) As stated in *McCauley*: ". . . *Gonzales* only stands for the proposition section 831.2 will not cloak a public entity with immunity *when its own conduct is partially responsible for inducing a person to be victimized by a dangerous condition of the nature of a hidden trap.*" (*McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 989, fn. omitted.)

Following *McCauley,* Division Three of the Fourth District Court of Appeal distinguished *Gonzales* in *Rombalski* v. *City of Laguna Beach* (1989) 213 Cal.App.3d 842, 852-853 [261 Cal.Rptr. 820]. The *Rombalski* court affirmed the granting of a summary judgment motion in favor of City of Laguna Beach, finding in part that the city was immune as a matter of law under section 831.2. There, a 13-year-old plaintiff became a quadraplegic after diving from a rock into shallow water at Pearl Beach, located on city property. The plaintiff contended the presence of a lifeguard tower and stairway which allowed access to the beach, together with the location of the rock, the varying depth of the water, and the lack of warning signs, all contributed to inducing him to dive into the ocean. The majority in *Rombalski* distinguished *Gonzales,* stating: "No evidence or facts are present demonstrating conduct on the part of the city that actively increased the degree of dangerousness of the rock nor did its conduct in any manner induce [plaintiff] to dive into the ocean." (*Rombalski* v. *City of Laguna Beach, supra,* 213 Cal.App.3d at p. 853.) And in a concurring opinion, Acting Presiding Justice Crosby directly criticized *Gonzales* for failing to "resolve[ ] the duty question before addressing the asserted immunity [citation]; 'the immunity cart [should not be] placed before the duty horse. [Citation.]' [Citation.]" (*Rombalski* v. *City of Laguna Beach, supra,* 213 Cal.App.3d at pp. 858-859, conc. opn. of Crosby, Acting P. J.)

As Justice Crosby noted: "[T]he hybrid theory of *Gonzales* is both unsound and unnecessary. Where liability is grounded on active negligence or a special relationship, the character of the property as public or private is immaterial. When liability derives from the government's role as an owner of property, services offered on that property are only marginally relevant with respect to the determination of whether it remains unimproved for purposes of section 831.2. The alchemy of *Gonzales* was to create liability

gold out of the mixture of two base elements: passive negligence and a dangerous condition on unimproved property. Neither could support a judgment alone. Nor can they together: Nothing added to nothing equals nothing. Put another way, *Gonzales* erred in combining a discussion of duty with a consideration of the immunity question and in failing to appreciate the inapplicability of Government Code section 835 in light of section 831.2." (*Rombalski* v. *City of Laguna Beach, supra,* 213 Cal.App.3d at p. 863, conc. opn. of Crosby, Acting P. J.)

In this case, the evidence before the court on the summary judgment motion (we note that the *Gonzales* decision arose at the pleading stage on demurrer) fails to support plaintiff's claim that the placement of the warning sign on the pier induced him to believe it was safe to swim and dive beyond the restricted area around the pier. In the factually analogous case of *Magana, supra,* 198 Cal.App.3d 999, which also criticized the "hybrid condition" rationale of *Gonzales,* the plaintiff became a quadraplegic as a result of his standing dive into a river at a point about 200 yards from the surf line at Santa Cruz Beach. The plaintiff apparently struck his head on a submerged object, probably a sandbar. Although lifeguards had been instructed to prohibit persons from diving into the river, the lifeguard stationed in the area where plaintiff was injured was elsewhere when the accident occurred. Conflicting evidence was presented as to whether the signs posted at entrances to the beach calling attention to a City of Santa Cruz ordinance against diving were present on the day of the accident. Relying upon *Gonzales,* the trial court denied the city's motion for summary judgment, finding among other things a triable issue of fact concerning the city's immunity under section 831.2.

Thereafter, the city in *Magana* petitioned for writ review of the denial of the summary judgment motion. In issuing a peremptory writ of mandate directing the trial court to grant summary judgment in favor of the city, the *Magana* court stated: "There is no testimony that lifeguards are now or have ever been placed so as to induce people to think it is safe to dive wherever there are no lifeguards. There is no evidence that anyone induced [the plaintiff] to dive into shallow water in an unimproved river, as he did, nor that he was misled by any City employee into believing the area was safe for diving. [Citation.]" (*Magana, supra,* 198 Cal.App.3d at pp. 1005-1006.)

Similarly in this case, we conclude defendant, by placing a sign on the pier warning against swimming within 200 feet thereof, did not improve or voluntarily assume the responsibility for reasonable risk management within the unimproved beach area where plaintiff entered the water. (*Magana, supra,* 198 Cal.App.3d at pp. 1005-1006; see *McCauley* v. *City of San Diego,*

*supra,* 190 Cal.App.3d at pp. 989-991; *Eben* v. *State of California, supra,* 130 Cal.App.3d at pp. 423-424.) It cannot be said that the placement of the sign on the pier created the illusion that the water 300 feet from the pier was free of hidden sandbars, a natural condition of the beach of which any reasonable person should have been aware.[3]

■ Moreover, as was also pointed out in *Magana,* "the presence or absence of warning signs in the area cannot abrogate the public entity's statutory immunity for injuries resulting from use of unimproved public property." (*Magana, supra,* 198 Cal.App.3d at p. 1006.) As *McCauley* stated, "the absolute nature of the immunity provided by section 831.2 precludes the imposition on the City of a duty to warn of dangerous natural conditions on unimproved property." (*McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 992.) The legislative history of section 831.2 clearly reveals the "Legislature intended to provide immunity where the public entity had knowledge of a dangerous condition which amounted to a hidden trap. . . . Consequently, a duty to warn of a known dangerous, purely natural condition is inconsistent with the absolute immunity provided by section 831.2." (*Ibid.; Magana, supra,* 198 Cal.App.3d at pp. 1006-1007; *Mercer* v. *State of California, supra,* 197 Cal.App.3d at p. 166.)

■ Nothing in the record of this case indicates defendant "engaged in conduct which actively increased the degree of dangerousness of a natural condition." (*Magana, supra,* 198 Cal.App.3d at pp. 1006-1007.) We conclude defendant has established as a matter of law that plaintiff's injury was caused by a natural condition of unimproved public property, for which it is immune under section 831.2.

### B. *Hazardous Recreational Activities Immunity*

Although not explicitly cited by the trial court, section 831.7, which defendant raised in both its answer and motion for summary judgment, also provides immunity in this case. Enacted in 1983, section 831.7 furnishes governmental immunity for injury sustained by "any person who partici-

---

[3] In concluding the action should have been disposed as a matter of law by nonsuit based on section 831.2, the court in *Eben* v. *State of California, supra,* 130 Cal.App.3d at pages 423-424, stated: "Cox [plaintiff's boat driver] was an experienced boater and skier and he obviously knew, as would any reasonable person, of the presence of rocks along the shoreline. There is no evidence that the State caused the boating public to believe that the East Fine Gold Creek shoreline was rock free. Although the State had a buoy program to mark obstacles occurring where the boating public would not anticipate them and set speed limits in some areas of the lake for benefit of swimmers and fishermen, it cannot be said the State created the illusion it was safe to travel at high speeds within 10, 15 or indeed 30 feet from the shoreline. As the State points out, the site of plaintiff's accident was simply what it appeared to be; 'a rocky, unrelentingly hard granite embankment.' "

pates in a hazardous recreational activity . . . ." (§ 831.7, subd. (a).) As defined by that section, "hazardous recreational activity" includes "Any form of diving into water from other than a diving board or diving platform, or at any place or from any structure where diving is prohibited and reasonable warning thereof has been given." (§ 831.7, subd. (b)(2).)

The undisputed evidence in this case establishes plaintiff sustained his injury while diving from the sand near the shore's edge into the ocean. He did not dive from a diving board, platform, or other structure. Thus by section 831.7's express terms, plaintiff engaged in a "hazardous recreational activity." (§ 831.7, subd. (b)(2); see *Rombalski* v. *City of Laguna Beach, supra,* 213 Cal.App.3d at pp. 850-851 (diving from rocks into surf constitutes a hazardous recreational activity under § 831.7, subd. (b)(2)); cf. *Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349 [257 Cal.Rptr. 356] (surfing constitutes a hazardous recreational activity under § 831.7, subd. (b)(3)).) Contrary to plaintiff's assertion, subdivision (b)(2) of section 831.7 does not require defendant to show it provided a reasonable warning in this case since plaintiff did not dive from a board, platform or other structure.

Nor do we find merit in plaintiff's reliance on the following exception created in subdivision (c)(1) of section 831.7: "Notwithstanding the provisions of subdivision (a), this section does not limit liability which would otherwise exist for any of the following: [¶] (1) Failure of the public entity or employee to guard or warn of a known dangerous condition or of another hazardous recreational activity known to the public entity or employee that is not reasonably assumed by the participant as inherently a part of the hazardous recreational activity out of which the damage or injury arose."

As we previously stated, defendant owed no duty to warn under section 831.2 even assuming the sandbar amounted to a hidden trap of which it had knowledge (see *McCauley* v. *San Diego, supra,* 190 Cal.App.3d at p. 990). Since no liability "would otherwise exist" (§ 831.7, subd. (c)) for defendant's failure to warn, the exception created by subdivision (c)(1) of section 831.7 does not come into play. Any other interpretation would contravene the express language of section 831.7, subdivision (c), and would be inconsistent with the absolute immunity provided under section 831.2.

C.   *Leave to File an Amended Complaint\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

\* See footnote, *ante,* page 184.

### DISPOSITION

We affirm the summary judgment. Defendant is entitled to recover costs on appeal.

Spencer, P. J., and Devich, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 17, 1990.