[No. B016391. Second Dist., Div. Four. Oct. 28, 1986.]

ROBERT WINTERBURN et al., Plaintiffs and Appellants, v. CITY OF POMONA, Defendant and Respondent.

**COUNSEL**

Sam B. Dunford and Sat Karam Kaur Khalsa for Plaintiffs and Appellants.

Gerald P. Schneeweis and Morris, Polich & Purdy for Defendant and Respondent.

## OPINION

**KINGSLEY, J.**—In a wrongful death action, the plaintiffs appeal the granting of summary judgment to the defendant, the City of Pomona. We affirm.

On April 12, 1982, Todd Winterburn, the plaintiffs' 11-year-old son, was killed when rocks and debris fell from the roof of a cave in which he was playing with another boy. The cave, which was approximately 14 feet high and extended back some 25 feet into the side of a hill, was a natural geological formation located on a greenbelt owned by the City of Pomona. Following Todd's death, his parents sued the City of Pomona for damages. The city moved for summary judgment which was granted on the grounds that plaintiffs' action was barred by Government Code section 831.2. This section provides that: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

On appeal, the plaintiffs do not contest the fact that the cave is a natural condition or that it is located on unimproved public property. Instead, they argue that it was never the intent of the Legislature in enacting section 831.2 to cover this type of situation and that the city is liable on the ground that it negligently performed a duty it had voluntarily assumed.

### I

The plaintiffs' principal contention is that the Legislature never intended section 831.2 to apply to anything other than recreational areas. To buttress their contention, the plaintiffs cite the Legislative Committee comment on section 831.2. This comment states:

"This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails.

"This section and Section 831.4 continue and extend an existing policy adopted by the Legislature in former Government Code Section 54002. It

is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received."

As the Supreme Court stated in *Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 833 [196 Cal.Rptr. 38, 670 P.2d 1121]: "The legislative policy underlying the immunity is clear. It is desirable to permit public use of governmental property but governmental agencies might prohibit such use if they were put to the expense of making the property safe, responding to tort actions, and paying damages. The comment concludes by pointing out the shortage of funds for improving property for recreational use and the fairness of requiring users to assume the risk of injury."

■ The plaintiffs argue, however, that this section was never intended to apply to unimproved property in urban areas but only to rural lands set aside for recreational purposes. The plaintiffs further contend that the greenbelt on which the cave was located was not intended for recreational use, citing defendant's answer to their interrogatories, when plaintiffs asked what use the land was put to, defendant answered, "Open space non-recreational Greenbelt."

Even if we were to adopt plaintiffs' interpretation of section 831.2, however, we do not agree that a greenbelt would fall outside the ambit of the statute. The greenbelt is not simply a vacant lot. The record indicates that it is covered with grass and trees and is essentially a public park, merely lacking the usual park-like improvements, such as restrooms, picnic sites and sporting facilities. As plaintiffs note in their complaint, the greenbelt was open to the public, was maintained for the public benefit, and was known to be used by members of the public. The city presumably so intended. In spite of the fact that city planners, who speak their own arcane dialect, may have regarded the land as "non-recreational," public access to and use of the land was clearly contemplated. We do not feel, therefore, that a greenbelt is outside the coverage of section 831.2 intended by the Legislature, when public parks and beaches in urban areas are undeniably included (e.g., *Rendak* v. *State of California* (1971) 18 Cal.App.3d 286 [95 Cal.Rptr. 665]).

## II

While not raised below at the trial court, the plaintiffs also contend on appeal that the city voluntarily undertook to protect the public from the cave, and then negligently failed to fulfill this duty, thus subjecting itself to liability. The record indicates that the city has been aware of the cave for at least 40 years, and had received some complaints about it. These complaints, however, do not appear to be that the cave was unsafe, but rather that it was being used by gang members. The plaintiffs also allege that city officials participated in meetings concerning the dangerous nature of the cave, although none of these are reflected in the record.

It is well established that section 831.2 is no bar to liability where a public entity voluntarily assumes the duty of protecting the public from a hazardous condition, and then negligently fails to perform that duty. (See *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882, 885-886 [182 Cal.Rptr. 73].) However, no voluntary assumption of duty is indicated here. It is undisputed that the city, in fact, did nothing to prevent access to the cave prior to the accident. There is not even an allegation that the city promised to do anything. Mere alleged hearings concerning the cave, assuming they actually occurred, do not establish that the city voluntarily undertook the duty to restrict entry to the cave. Accordingly, even if we were to consider this contention as not waived on appeal, there is no evidence that the city negligently failed to perform a duty it voluntarily assumed.

## III

While it is unclear from plaintiffs' brief, plaintiffs appear to argue that Government Code section 835, which imposes general liability on public entities, should control over section 831.2 as the city knew of the dangerous condition that the cave presented. A simple reading of section 835 shows the fallacy of this argument, as that section imposes liability "except as provided by statute. . . ." Moreover, section 831.2 grants absolute immunity to public entities. No exception has been made for hazardous conditions which the public entity knew of.

## IV

Plaintiffs finally contend that there are triable issues of fact in this case which require reversal. We fail to see any.

The judgment is affirmed.

Woods, P. J., and Arguelles, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 14, 1987.