[No. H003908. Sixth Dist. Feb. 22, 1988.]

CITY OF SANTA CRUZ, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY,
Respondent;
RAMIRO MAGANA, Real Party in Interest.

COUNSEL

Atchison & Anderson and Vincent P. Hurley for Petitioner.

No appearance for Respondent.

David S. Sabih and Michael W. Stamp for Real Party in Interest.

OPINION

ZECHER, J.*—The City of Santa Cruz (City) petitions for writ review under Code of Civil Procedure section 437c, subdivision (*l*), after the trial court denied City's request for summary judgment based on natural condition immunity, Government Code section 831.2, and immunity of emergen-

---

* Assigned by the Chairperson of the Judicial Council.

cy medical technicians, Health & Safety Code section 1799.106. We have concluded the trial court should have granted City's motion.

RECORD

Plaintiff and real party in interest, Ramiro Magana, Jr., became a quadriplegic as a result of his dive into the San Lorenzo River in the City of Santa Cruz on April 3, 1985, at a point about 200 yards up river from the surf line at Santa Cruz beach. Although depositions of Magana and of three eyewitnesses give somewhat different versions of what may have occurred, all versions concur that Magana ran or walked into the water with some friends, attempted a dive from a standing position and, apparently, struck his head on a submerged object (probably a sandbar) and injured his spine. At least one witness saw children standing in a place where the water came up about to their knees. The lifeguard assigned to the area said in his deposition that he was elsewhere attending to another problem when the accident happened.

The trial court found, based on uncontradicted deposition testimony, that the San Lorenzo River at the point of injury is unimproved public property in a natural condition. This evidence included the deposition of one expert, Griggs, who said the river has been in the same condition for some 57 years. Sandbar formation, a function of weather and tides, is controlled by the fluctuating water flow through the river. The river is not substantially different now from what it ever was. Another declaration said the San Lorenzo River has a natural annual cycle depending on the rainfall, runoff and sediment movement, and ocean tides. Furthermore, the channel reforms itself every one and a half to two years. Although the City may have performed recent work in the Loch Lomond Reservoir (on a tributary stream) and did repair the Soquel Avenue bridge over the river, this work cannot have had a lasting effect on the natural operation of the stream processes. Minor alterations caused by such work are removed each year by natural forces. Such man-made alterations are temporary and cannot affect buildup of sandbars.

Opposing the City's statement of undisputed facts, Magana offered the declarations and deposition testimony of two experts, Sinn and Gabrielsen, stating that the river had been improved. However, Gabrielsen's deposition testimony, closely scrutinized, recites only that dangerous sandbars were present in the river which the City "had to do something about" before the spring swimming season. In addition, he documents previous accidents which have occurred in the area. Although he says that the river has been bulldozed in the past, he neither exhibits personal knowledge of that fact nor describes how such bulldozing could have caused the present condition

of the river. The condition, according to City's experts, fluctuates regularly with the seasons and tides so that past bulldozing would have only temporary effects at best. In summary, Gabrielsen's declaration merely says dangerous sandbars were present in the river and that there have been previous accidents there, neither of which assertions addresses the question of whether the river was improved.

City's expert, Weber, said that Gabrielsen's statements about the river were based on pictures taken seven to eight years apart. Furthermore, these statements cannot support his conclusion that at the time of the injury a large sandbar was present which should have been removed by bulldozing. Also, Gabrielsen does not hold himself out as qualified in the areas of fluvial mechanics, coastal processes, hydrology and geomorphology, nor does he claim expertise regarding the processes operating in the San Lorenzo River to change its bottom and the configurations of its channel annually. Gabrielsen admits that the condition of the river changes from time to time, but maintains that when it changes, the City has the responsibility and the obligation to assess that change and determine what has to be done to make the river safe. These assertions are legal conclusions, not expert opinions of fact.

Magana's expert Sinn contends there is ample evidence that the City of Santa Cruz has assumed the responsibility of lifeguarding in the area. However, he did not precisely pinpoint where such lifeguarding had been done. He also said the river has been dredged. He offers this conclusion without personal knowledge or opinion as to whether such dredging accounts for the present condition of the river bottom.

In his deposition the lifeguard, Agnello, who was assigned to the area where Magana was injured, said that he had been instructed to prohibit persons from diving into the river. Additionally, he enunciated that signs are normally posted at all entrances to the beach which call attention to a city ordinance against diving. Other lifeguards agreed that signs are posted in this manner. However, the testimony of the various eyewitnesses conflicts as to whether signs were posted at nearby entrances the day of the accident.

Magana, in his statement of undisputed facts, admits the following facts: He saw no lifeguard tower in the vicinity nor any lifeguard present in the area. Although alleging that the City's failure to provide warnings caused his accident, he does not allege that the accident was caused because he relied on the presence of lifeguards in some way. On the contrary, he maintained that the fact that there was no lifeguard where he dived indicated to him that there was nothing to be expected by way of help in that area.

Finally, he asserts that prior accidents have occurred in the vicinity and that, therefore, the City had constructive or actual notice of danger.

### THE JUDGMENT BELOW

The trial court's formal order denying summary judgment to City decided that the following triable issues of fact were raised: (a) whether the City is liable for plaintiff's injuries caused by a natural condition of unimproved public property; (b) whether the City's provision of lifeguard services and signage negates immunity from liability for injuries caused by natural conditions; (c) whether the lifeguards had a duty to prevent plaintiff from jumping into the San Lorenzo River in the manner described. The court also determined that the San Lorenzo River is in a natural condition at the point of injury, and that the City and the lifeguards are immune from liability for treatment and care provided to plaintiff. The court sustained City's objections to the expert deposition testimony of Sinn and Gabrielsen (and of attorney Boroff) relating to the formation of the river bottom, finding that this evidence is speculative and lacks firsthand knowledge.

### DISCUSSION OF ISSUES[1]

Government Code section 831.2 provides immunity from liability for injury resulting from a natural condition of unimproved public property: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." The immunity is absolute. (*Osgood* v. *County of Shasta* (1975) 50 Cal.App.3d 586, 589 [123 Cal.Rptr. 442].)

The formal order denying summary judgment to City expressly relies on the decision in *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73]. That decision held that a City could be liable for a drowning due to a rip tide at an unimproved beach because the beach constituted a hybrid condition. The city had undertaken generally to provide lifeguards at city beaches. The absence of a lifeguard at the particular beach at the time in question might have been taken by the victim to

---

[1] The opposition also raises issues as to the formal writ presentation. Magana claims the petition did not include the complete transcript on the hearing, and that when the court signed the formal order on January 5, 1988, petitioner City did not provide this court with that order. Therefore Magana seeks denial of the writ petition on the ground of incomplete record provided, *Sherwood* v. *Superior Court* (1979) 24 Cal.3d 183 [154 Cal.Rptr. 917, 593 P.2d 862]. However, this court exercises discretion to accept the petition. The presentation was not misleading in any way and was sufficiently complete to permit informed review, and the trial court's reliance on the *Gonzales* decision, *infra,* is clear error.

mean the beach was safe. A hybrid condition thus existed, consisting of the unimproved beach, plus the absence of a customary lifeguard. Therefore, the beach was not unimproved for purposes of conferring immunity on the city under Government Code section 831.2. Accordingly, the statutory immunity did not bar a wrongful death action on behalf of the drowned swimmer's heirs, against the city, for failure to warn the general public of unsafe conditions in the surf at the beach. The city had assumed that obligation to warn by providing lifeguard services generally.

Later appellate decisions have distinguished *Gonzales*. (*McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981, 986-989, mod. 190 Cal.App.3d 1675d [235 Cal.Rptr. 732]; *Winterburn* v. *City of Pomona* (1986) 186 Cal.App.3d 878, 882 [231 Cal.Rptr. 105]; *Kuykendall* v. *State of California* (1986) 178 Cal.App.3d 563, 566 [223 Cal.Rptr. 763]; *Geffen* v. *County of Los Angeles* (1987) 197 Cal.App.3d 188 [242 Cal.Rptr. 492].) A nearly contemporaneous case went in precisely the opposite direction. (*Eben* v. *State of California* (1982) 130 Cal.App.3d 416 [181 Cal.Rptr. 714] [water-skier on natural lake injured on submerged rock near shore, claimed failure to place warning buoys created false sense of safety near shore; held, state absolutely immune from liability for use of lake in natural condition].) The same judge who authored *Gonzales* retrenched considerably, holding in *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d 981, that the city was immune under Government Code section 831.2, and had no obligation to warn or to protect, in a situation where the plaintiff drank alcoholic beverages, wandered onto a trail over a cliff, and finally fell 200 feet to the beach below, sustaining severe injury. There were warning signs placed in various locations in the vicinity (e.g., "Caution, Slippery Trail"), but the court declined to draw the inference that it drew in *Gonzales,* that the *absence* of such a sign where plaintiff fell somehow abrogated the City's immunity by creating a hybrid condition—natural, unimproved, but lacking a sign though signs were provided elsewhere. *McCauley* does not overtly repudiate *Gonzales,* but it greatly limits its potential significance.

*McCauley* also pointed out that *Gonzales* was a *pleading* case, raised on demurrer, where the complaint alleged "an essentially hybrid dangerous condition relating to unimproved public property, partially natural and partially artificial in character, the result of a combination of a natural defect of the real property and the relied-upon *conduct* of the governing public entity." (*McCauley, supra,* 190 Cal.App.3d 981, 987.)

Here, however, the parties are at summary judgment. There is no evidence of any hybridization of the natural condition of the San Lorenzo River. There is no testimony that lifeguards are now or have ever been placed so as to induce people to think it is safe to dive wherever there are no

lifeguards. There is no evidence that anyone induced Magana to dive into shallow water in an unimproved river, as he did, nor that he was misled by any City employee into believing the area was safe for diving. (See also *Winterburn* v. *City of Pomona, supra,* 186 Cal.App.3d 878, decided for the public entity on summary judgment [plaintiffs' son died when rocks fell from the roof of a cave he was playing in; no showing public entity had done anything to assume a duty of protecting the public from a hazardous condition of unimproved property, and immunity is absolute].)

■ Further, as the *McCauley* decision, *supra,* held, the presence or absence of warning signs in the area cannot abrogate the public entity's statutory immunity for injuries resulting from use of unimproved public property. Even if Magana could prove the absence of signs in the immediate vicinity of the accident, this proof would not aid him. *McCauley* holds there is no duty to post signs on unimproved public property. (Accord, *Mercer* v. *State of California* (1987) 197 Cal.App.3d 158, 170 [242 Cal.Rptr. 701].) And if there in fact were signs in existence, there would be no argument for liability at all. Therefore, the evidentiary conflict as to whether or not signs were posted is not relevant to the result.

■ Likewise irrelevant is the issue of whether lifeguard services were negligently provided. Regardless of whether Agnello was instructed to forbid diving and whether he was or was not at his post at the time of the accident, the fact remains that Magana's own account of the accident leaves no room to conclude that Agnello could have prevented the injury. Magana himself states that he walked into the water and then, from a standing position, dove. It is impossible for a jury to conclude that a lifeguard seated in a tower nearby could have acted in time to prevent that dive. Nor does Magana's own testimony in any way implicate the lifeguard, either by saying that Magana relied on lifeguards generally to prevent him from diving, or by saying that he thought it was safe to dive because lifeguards were not present. Regarding the need to allege reliance on the public service, see, e.g., *Mercer* v. *State of California, supra,* 197 Cal.App.3d 158, 168. In short, although plaintiff's situation is tragic, there is no showing that any of the blame rests on City.

■ The legislative policy underlying the immunity is to permit public use of governmental property without making the cost prohibitive, given the shortage of funds to improve property for recreational use and the fairness of requiring users to assume the risk of injury. (*Milligan* v. *City of Laguna Beach* (1983) 34 Cal.3d 829, 833 [196 Cal.Rptr. 38, 670 P.2d 1121].) Other decisions have noted that the legislative history of Government Code section 831.2 clearly shows the Legislature intended to preclude liability for unimproved natural conditions unless the public entity engaged

in conduct which actively increased the degree of dangerousness of a natural condition. (See *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 989, fn. 7; *Geffen* v. *County of Los Angeles, supra,* 191 Cal.App.3d at p. 193; see also Comment, *Surviving the "Chubasco": Liability of California Beach Communities for Natural Conditions of Unimproved Public Property* (1986) 23 San Diego L.Rev. 723, 734.) As the *Geffen* decision notes, the "hybrid condition" rationale of *Gonzales* is completely inconsistent with the meaning and the legislative intent of the statute.

Also, as is noted in *Geffen, supra,* the Legislature has enacted a new statute which prospectively overrules *Gonzales,* providing, effective January 1, 1988, that public beaches shall be deemed to be in a natural condition notwithstanding the presence or absence of lifeguards or signs (or other public safety services). (Gov. Code, § 831.21, applying to causes of action based on acts or omissions after Jan. 1, 1988.) Although not applicable here, the statutory change expresses a public policy to protect public entities from liability for unimproved natural conditions on a broad basis, which policy also underlies the original enactment, as the legislative history shows.

The only basis for liability that Magana alleged against City, other than dangerous condition of the river, was that City lifeguards failed to provide adequate and safe extrication and first aid to him promptly after he was injured. City offered uncontradicted evidence that all lifeguards employed by the City on the date in question were certified emergency medical technicians. As such, they and their employer are immune from civil liability arising out of their conduct in treating injured persons at the scene of an emergency, unless they perform acts or omissions in a grossly negligent manner or in bad faith. (Health & Saf. Code, § 1799.106.) The allegation here is that the lifeguard assigned to the area where the injury occurred did not respond and offer aid for 20 minutes. This is insufficient to raise a triable issue of gross negligence or bad faith. Accordingly, the statutory immunity again applies and prevents imposition of liability on City based on its failure to respond promptly. The trial court properly granted City summary adjudication of this issue.

We conclude the court should have granted summary judgment in favor of City, and a peremptory writ of mandate is appropriate to compel such judgment.

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and he has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

## DISPOSITION

Let a peremptory writ of mandate issue as prayed, directing respondent court to grant summary judgment in favor of petitioner, the City of Santa Cruz. As prevailing party, petitioner shall have costs.

Agliano, P. J., and Brauer, J., concurred.

A petition for a rehearing was denied March 14, 1988, and the petition of real party in interest for review by the Supreme Court was denied May 4, 1988.