[No. G006191. Fourth Dist., Div. Three. Aug. 30, 1989.]

BRYON MICHAEL ROMBALSKI et al., Plaintiffs and Appellants,
v.
CITY OF LAGUNA BEACH, Defendant and Respondent.

844

COUNSEL

Harney, Drummond, Garza & Packer and Thomas Kallay for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs and James W. Parker for Defendant and Respondent.

OPINION

**OLIVER, J.**[*]—Bryon Michael Rombalski and Carol L. Steen (hereafter Bryon) appeal the granting of a summary judgment motion in favor of City of Laguna Beach.

### Factual and Procedural Background

On July 31, 1984, Bryon then age 13 dove from a rock approximately 9 to 10 feet tall and 14 by 9 feet wide into the ocean at Pearl Beach located on the city's property and suffered severe injuries. Three of his young friends saw him floating in the water and after great effort were able to drag him to shore, two of them supporting Bryon from his underarms with Bryon's neck down to his chest, the other pushing from the rear with no support to his head. Bryon is now a quadriplegic, with no use of his body below his shoulders and he is permanently confined to a wheelchair.

Before the disastrous dive, Bryon saw other individuals jumping off the rock and was aware an individual had injured his leg in so doing. In jumping into the waves from the rock, Bryon timed his jumps into the waves as they rolled in. Bryon had been told repeatedly by his friends not to dive head first into the water. Bryon was and is a resident of Arizona and as of the time of the accident had been to the ocean only a few times while visiting his father in California every year.

Pearl Beach is accessible to the public by a long stairway. A sign at the top warns against littering, drinking, and other minor offenses, but says nothing about diving from the rocks. The rock appears to have always been in its present location, and there was no evidence it had been modified by man. Bryon stated in his deposition that when the water was not hitting the rock, it was probably up to his neck. One of his friends, John Howard, stated in his deposition that when the waves surged the water would be

---

[*] Assigned by the Chairperson of the Judicial Council.

about six feet deep and it would recede to about one foot in depth. Another friend testified the water varied between waist high at its greatest depth to knee high at its lowest.

A lifeguard station at Pearl Beach was not manned at the time of the accident; the lifeguard scheduled for duty called in sick and a substitute lifeguard had not yet arrived. The Laguna Beach lifeguard training manual specifically admonishes that the rocks on Pearl Beach, including the rock Bryon dove from, "should be watched carefully." Before the accident, Bryon had been warned by a lifeguard who had seen him dive from the rocks to not do it again.

On October 30, 1984, a claim was filed with the city alleging "injury caused by dangerous and defective condition of the rock and beach, . . . inadequate and negligent warning thereof and protection therefrom . . . ." A complaint was filed April 19, 1985, containing two causes of action. The first cause of action alleged: " . . . Said public property was in a dangerous and defective condition . . . by reason of its configuration, the height of the rock, the depth of the ocean, irregularities in the ocean bottom, and submerged rocks . . .; that said condition was created by defendants, and each of them, and was known and should have been known to defendants, and each of them, who negligently failed to remedy said condition, or adequately warn the public, including plaintiff, thereof, or to protect the public, including plaintiff, therefrom, that at said time, and prior thereto, defendants, and each of them, had undertaken to provide warnings, protection and lifeguard services thereat." The second cause of action sought recovery of medical and incidental expenses by Bryon's mother and is not relevant to this appeal.

Laguna Beach denied liability and raised specific affirmative defenses, including Government Code sections 815, 830.6, 831.2, 831.7, 835.4, 840.6 and Civil Code section 846. Thereafter the city moved for summary judgment. Before the hearing on that motion, however, Bryon moved to file a first amended complaint. The municipality filed formal opposition, but the motion was not heard because plaintiff had failed to file a meet and confer statement pursuant to Orange County Rules of Court, rule 504. The city's motion for summary judgment was granted, and an order entering judgment was filed on October 20, 1987. A motion for reconsideration was denied on December 11, 1987. Bryon renewed his motion for leave to file a first amended complaint after summary judgment was granted and before the motion for reconsideration. Bryon filed his notice of appeal on the entry of judgment pursuant to the order granting the motion for summary judgment on December 17, 1987. On December 30, 1987, the court denied Bryon's motion to file the first amended complaint.

*Issues Presented on Appeal*

First, Bryon contends several triable issues of fact exist which preclude summary judgment. Second, he argues that the third cause of action of his proposed first amended complaint, alleging a special relationship between him and the city upon which liability could be imposed independently of the dangerous condition, could only be determined in light of triable issues of fact. Third, he claims factual issues exist as to Laguna's mandatory duties under Government Code section 815.6, as alleged in the second and fourth causes of action of the proposed amended complaint. We disagree with each of Bryon's contentions and will deal with them in the order presented above.

Code of Civil Procedure section 437c, subdivision (c) sets forth the standard for granting a motion for summary judgment. It provides in relevant part: "The motion [] shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (See *Terrell* v. *Local Lodge 758, etc., Machinists* (1957) 150 Cal.App.2d 24, 26 [309 P.2d 130].) ■ In *Rickel* v. *Schwinn Bicycle Co.* (1983) 144 Cal.App.3d 648, 653 [192 Cal.Rptr. 732], the Court of Appeal observed, " 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation.]" But, "where there is no material issue of fact to be tried and the sole question before the trial court is one of law as to whether the claim of the moving party is tenable on the undisputed facts, it is the duty of the trial court on a motion for summary judgment to hear and determine the issue of law." (*Pittman* v. *Pedro Petroleum Corp.* (1974) 42 Cal.App.3d 859, 862 [117 Cal.Rptr. 220].)

■ More recently, the California Supreme Court noted, "The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. [Citation.] Accordingly, the function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citation.] [¶] Summary judgment is a drastic measure that deprives the losing party of a trial on the merits. [Citation.] It should therefore be used with caution, so that it does not become a substitute for a trial. [Citation.] . . . [¶] A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

DISCUSSION

No material triable issues of fact are present under the first cause of action. ■ Bryon's first cause of action alleges injury caused by a dangerous condition of public property as set forth in Government Code section 835.[1]

I

*As a matter of law the rock in question is not a dangerous condition.*

Section 830 defines "dangerous condition" as "a condition of property that creates a substantial ([not] minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Section 830.2 provides that the "condition is not a dangerous condition [if] viewing the evidence most favorably to [Bryon, either the trial or appellate court] determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when . . . used with due care in a manner in which it was reasonably foreseeable that it would be used."

Laguna Beach correctly points out that the case of *Fredette* v. *City of Long Beach* (1986) 187 Cal.App.3d 122 [231 Cal.Rptr. 598] stands for the proposition that public entities may be liable for a failure to warn of dangerous conditions only when the presence of an actual dangerous physical defect or an otherwise dangerous condition would not be apparent to persons using the property with due care. In *Fredette* the plaintiff was injured when he dove from a pier into shallow water having previously used the lagoon on numerous occasions knowing the purpose of the pier was to provide access to a float and not for use as a diving platform. Similarly, Bryon was aware of the rock and shore area, and that another individual had been injured while jumping from the rock, had been warned by two of his friends that he should not dive into the water, had timed his previous entries into the water to coincide with the surge of the tide, and had been

---

[1] Government Code section 835 provides: "[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Unless otherwise indicated all sections hereafter cited refer to the Government Code.

warned by a lifeguard not to dive from the rocks. In *Fredette,* as in this case, the condition of the rock only became dangerous when misused. Since Bryon is unable to show he exercised due care he cannot as a matter of law establish the rock constitutes a dangerous condition.

## II

*There are no triable issues of fact concerning what precautions Laguna Beach should have taken to protect Bryon from the risks of entering the water from the rock.*

■ Bryon's contention that the standard of care towards a person of his age (13) and whether the city failed to meet that standard creates triable issues of fact is without merit. This contention is premised on the fact it is foreseeable "a child inexperienced and inexpert in water safety should visit a public beach maintained by City." In effect Bryon contends a lower standard of care should be applied to him because of his age and cites the Law Revision Commission's comment to section 830, subdivision (a) as authority.[2] We agree with Laguna. This is a strained interpretation of the comment and is inapplicable except in those cases where children because of their age cannot understand and reason out the risks involved. As previously noted Bryon was aware of the rock and shore area and was timing his dives to coincide with the wave action and had been warned of the dangers present, therefore no special precautions were required of the city.

## III

*Bryon's dive was a "hazardous recreational activity" within the meaning of Government Code section 831.7.*

Section 831.7, subdivision (b)(2) provides that a " 'hazardous recreational activity' " means "[a]ny form of diving into water from other than a diving board or diving platform, or at any place or from any structure where diving is prohibited and reasonable warning thereof has been given." ■ Bryon contends the "from any structure where diving is prohibited and reasonable warning thereof has been given" language creates a triable issue of fact as to whether diving from the rock was not prohibited

---

[2] In part, the comment states: "Where it is reasonably foreseeable that persons to whom a lower standard of care is applicable—such as children—may be exposed to a substantial risk of injury from the property, the public entity should be required to take reasonable precautions to protect such persons from that risk. Thus, a public entity may be expected to fence a swimming pool . . . if it is reasonably foreseeable that small children may be injured if such precautions are not taken." (See Cal. Law Revision Com. com., West's Ann. Gov. Code, § 830, p. 266 [Deering's Ann. Gov. Code (1982 ed.) § 830, p. 222].)

or, if it was, whether reasonable warning was given. We disagree. Section 831.7, subdivision (b)(2) is in the disjunctive and differentiates between diving from places that are not diving boards or diving platforms and places or structures that are. The statute is clear on its face: A hazardous activity is present when one dives from a place other than a diving board or diving platform (which would include a rock) or from *any* structure where such diving is prohibited and reasonable warning has been given.

Bryon's interpretation of section 831.7, subdivision (b)(2), if correct, would require warning signs to be posted when by law there is no duty to post warning signs or any signs on unimproved public property. In other words, every rock, cliff or appurtenance located on any body of water in the State of California would have to be posted. This is not the law. (*City of Santa Cruz v. Superior Court* (1988) 198 Cal.App.3d 999, 1006 [244 Cal.Rptr. 105]; *McCauley v. City of San Diego* (1987) 190 Cal.App.3d 981, 990-991 [235 Cal.Rptr. 732].) Therefore, as a matter of law, the complete immunity provided by section 831.7 is applicable.[3]

## IV

*Bryon's contention that section 831.7, subdivision (c)(1) imposes liability on Laguna Beach for failing to warn of a known dangerous condition that caused injury as a result of hazardous recreational activity lacks merit.*

Bryon argues triable issues of fact are present to determine (1) if diving was or was not prohibited and (2) whether reasonable warning was required to be given. He concludes that if diving was not prohibited and reasonable warning thereof was not given the city's hazardous activity defense fails. We disagree. In *De Vito v. State of California* (1988) 202 Cal.App.3d 264 [248 Cal.Rptr. 330], the court determined an exception to the immunity provided by section 831.7 exists where a public entity fails to guard or warn of a known dangerous condition that is not reasonably assumed by the participant as inherently a part of the hazardous recreational activity out of which the injury arose. In *De Vito* the plaintiff was injured while swinging from a firehose attached to a tree limb over a cliff. The court held plaintiff had reasonably assumed the inherent risk of falling down the slope. It is therefore clear the phrase "that is not reasonably assumed by the participant as inherently part of the hazardous recreational activity" (§ 831.7, subd.

---

[3] Section 831.7, subdivision (a) provides: "Neither a public entity nor a public employee is liable to any person who participates in a hazardous recreational activity . . . who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself or herself and was voluntarily in the place of risk, or having the ability to do so failed to leave, for any damage or injury to property or persons arising out of that hazardous recreational activity."

(c)(1)) is intended to modify the phrase "known dangerous condition" as well as the phrase "another hazardous recreational activity."

Following this interpretation of section 831.7, subdivision (c)(1), an inherent risk of diving from a rock is that one may strike one's head when the water is shallow rather than deep. For Bryon's contention to have merit would require a duty be present towards Bryon. This duty could only exist if the rock constituted a dangerous condition. The rock does not constitute such a condition. Even if it did, Bryon knowingly assumed the inherent risks of diving from the rock—he timed his diving with the waves, he knew of the potential dangers and he could see the depth of water around the rock. The immunity of Government Code section 831.7 is therefore available to Laguna as a matter of law.

V

*Byron's contention triable issues of fact exist to determine whether the immunity of § 831.2[4] applies lacks merit.*

██ Bryon contends the area at Pearl Beach was changed by the stairway, which allowed access to the beach, and by the presence of a lifeguard tower. He argues these factors, acting in concert with the location of the rock; the varying depth of the water; and the lack of warning signs all contributed to inducing Bryon to dive into the ocean.

In the case of *Bartlett* v. *State of California* (1988) 199 Cal.App.3d 392 [245 Cal.Rptr. 32] a passenger in a dune buggy that went over a sharp drop at the Pismo Dunes State Vehicular Recreation area was injured. The court held, "[I]n order to erect a triable issue of fact whether the injury was caused by other than a natural condition, the Bartletts must produce evidence that there was some form of unnatural physical change 'in the condition of the property *at the location of the injury*.' [Citations.]" (*Id.,* at p. 400.) In *Mercer* v. *State of California* (1987) 197 Cal.App.3d 158, 165 [242 Cal.Rptr. 701], also involving a dune buggy accident, the court concluded immunity was present unless it was shown there was a physical change in the characteristics of the property at the location of the injury.

Since there is no duty to post warning signs as a matter of law (*City of Santa Cruz* v. *Superior Court, supra,* 198 Cal.App.3d 999; *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d 981.), the issue presented is whether the presence of a stairway from the cliff to the beach in the location of a

---

[4] Section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

lifeguard station, coupled with the warning of a lifeguard to not dive from the rocks, constituted such actions to cause the municipality to lose its immunity under section 831.2. In *McCauley,* the court stated: "In other words, once a public entity voluntarily provides a protective service for certain members of the public, inducing their reliance on the non-negligent performance of that service, the public entity will not be shielded from potential liability by section 831.2 where the dangerous character of the natural condition is compounded by the public entity's negligent performance of the voluntarily assumed protective service." (*McCauley, supra,* at pp. 987-988; see also *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73].)

In *Gonzales* the issue was whether the absolute immunity of section 831.2 shielded the city from liability as a matter of law at the demurrer stage where the complaint alleged a potentially hybrid dangerous condition relating to unimproved public property, partially natural and partially artificial in character, the result of a combination of a natural defect of the real property and relied upon conduct of the governing public entity. As stated in *McCauley, "Gonzales* only stands for the proposition section 831.2 will not cloak a public entity with immunity *when its own conduct is partially responsible for inducing a person to be victimized by a dangerous condition of the nature of a hidden trap.*" (*McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 989.)

For Laguna to lose its absolute immunity not only must there be conduct on the part of the city but such conduct must have induced reliance by Bryon. No evidence or facts are present demonstrating conduct on the part of the city that actively increased the degree of dangerousness of the rock nor did its conduct in any manner induce Bryon to dive into the ocean. Therefore, the absolute immunity of section 831.2 is available to the city as a matter of law.

## VI

*Bryon's contention triable issues of fact are present creating a special relationship between him and the city lacks merit.*

 A duty may arise if there is a special relationship between Bryon and the city. For such a special relationship to exist, there must be a voluntary assumption of a protective duty to a certain public person that induces reliance in that person. Bryon's first amended complaint pleads such a special relationship. Even assuming the first amended complaint had been allowed by the court, the question is whether there are triable issues of material fact to support the allegations. In *Mercer* v. *State of California,*

*supra,* 197 Cal.App.3d 158, as in this case, a public entity has no duty to warn of dangerous natural conditions unless it voluntarily assumes a protective duty toward the public. Facts presented by Bryon do not tend to show Laguna Beach voluntarily assumed a duty and therefore no duty to warn is present.

Similar facts were present in *City of Santa Cruz* v. *Superior Court, supra,* 198 Cal.App.3d 999, a case where the plaintiff walked into the water, dove, and came up with injuries.[5] Here, Bryon stated he had seen no lifeguards; he had been warned by his friends not to dive from the rock; he had timed his entry into the water to coincide with the surge of the tide; and he had specifically been told not to dive from the rocks by a lifeguard. Laguna Beach did nothing to induce reliance by Bryon, nor did it place him in peril, nor increase his risk of harm. Bryon was fully aware of the conditions in the water adjacent to the rock and therefore we conclude no special relationship imposing a duty of care existed, and we need not reach immunity issues. (*Foremost Dairies, Inc.* v. *State of California* (1986) 190 Cal.App.3d 361, 366 [232 Cal.Rptr. 71]; *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137].)

## VII

*Bryon contends it was prejudicial error to deny leave to file his first amended complaint.*

■ Admittedly, the general rule in California is a "policy of great liberality in permitting amendments . . . ." (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1121, p. 537.) But, where the defendant is a public entity, a plaintiff must file a timely claim and the theories alleged in the complaint must be within the allegations of the claim. (*Nelson* v. *State of California* (1982) 139 Cal.App.3d 72, 79 [188 Cal.Rptr. 479].) However, we assume the artful pleading of the proposed first amended complaint meets the above standards.

■ Bryon contends the second and fourth causes of action of his first amended complaint allege the city's mandatory duty pursuant to section 815.6. But "to establish a basis for liability under [section 815.6], the plaintiff must demonstrate to the court's satisfaction that (1) an 'enactment' imposes a mandatory duty upon the defendant entity; (2) performance of

---

[5] The court stated: "There is no testimony that lifeguards are now or have ever been placed so as to induce people to think it is safe to dive wherever there are no lifeguards. There is no evidence that anyone induced [plaintiff] to dive into shallow water in an unimproved river, as he did, nor that he was misled by any City employee into believing the area was safe for diving." (*Id.,* at pp. 1005-1006.)

the duty was intended to protect against the kind of injury suffered by the plaintiff; and (3) the defendant public entity's failure to use reasonable diligence to discharge the mandatory duty proximately caused plaintiff's injury. [Citations.]" (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.41 p. 94.)

 A review of the proposed first amended complaint demonstrates he is attempting to plead within the "hybrid condition" described in *Gonzales v. City of San Diego, supra,* 130 Cal.App.3d 882. However, section 831.2 immunity will only be lost where a public entity's conduct actively increases "the degree of dangerousness of the natural condition . . . ." (*McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 993.)

The charging allegations of Bryon's proposed second and fourth causes of action alleged (1) Bryon used the beach in reliance on the proper conduct of lifeguard and management services which were voluntarily provided by the city and included within said services was the alleged duty to perform lifesaving procedures "which entail the performance of rescues in a manner to mitigate or avoid injuries or exacerbations of injuries."

Section 815.6 provides a statutory basis for liability where the public entity negligently fails to discharge a mandatory duty and the mandatory duty is imposed by a statute that is designed to protect against the risk of a particular kind of injury. Section 815, subdivision (a) provides, "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part [ ] is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

Bryon's contention the city's motion for summary judgment failed to address this alleged alternative theory (i.e., *mandatory duty*) is not supported by the record. His first motion to file an amended complaint was not heard because of his failure to comply with Orange County Rules of Court, rule 504. However, in fact, the court did consider his first amended complaint when it made its ruling on October 27, 1987, and granted Laguna's motion for summary judgment. His second motion to file a first amended complaint was denied by the court after Bryon had filed his notice of appeal, and the superior court was divested of jurisdiction to hear the motion as of the filing of the notice of appeal. (Code Civ. Proc., § 916.) All of Bryon's potential theories of recovery including the alleged "mandatory duty" theory were considered by the trial court. Therefore, no prejudice resulted in the trial court's denial of leave to file a first amended complaint. For this

reason, we need not discuss the city's contention that the theories pled in Bryon's first amended complaint failed to reflect the allegations contained in his previously filed claim. (*Donohue* v. *State of California* (1986) 178 Cal.App.3d 795 [224 Cal.Rptr. 57]; *Nelson* v. *State of California, supra,* 139 Cal.App.3d 72.) We therefore conclude no triable issues of fact are presented and we affirm the judgment.

Respondents are entitled to costs on appeal.

Sonenshine, J., concurred.

**CROSBY, Acting P. J.,** Concurring.—The City of Laguna Beach was entitled to judgment, but I cannot wholly subscribe to the majority's analysis of the issues. Summarized, my view is as follows: Although the sea-washed rock is a dangerous condition of public property, the city had no legal duty to warn the public not to use it as a diving platform or to assign a lifeguard to that location. Accordingly, the municipality could not be liable as a matter of law.

I

Government Code section 831.2 provides, "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." The rock from which the minor launched himself into the surf was natural and unimproved. This seems clear enough, but plaintiffs contend the rock may not be viewed in a vacuum, that it "is to be considered in light of the voluntar[ily] assumed lifeguard services that were undertaken by the City of Laguna Beach. This is a hybrid condition [because] [t]he lifeguard services are an artificial condition created by the city." For this theory they rely on *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73]. There, Division One of this court agreed an ocean facing beach constitutes *unimproved* property, but determined it was not in a *natural* condition for purposes of section 831.2 because the public entity provided lifeguard services and "perform[ed] that voluntarily assumed service negligently by failing to warn of the known, hazardous, natural condition [riptides]." (*Id.,* at p. 886.) Unlike my colleagues, I believe the most appropriate disposition of the present case is via a frank disavowal of *Gonzales.*

*Gonzales* appeared in April 1982. The timing was unfortunate. Had the court the benefit of *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894], which was decided but a few months later, the outcome might have been different; and the considerable conster-

nation and confusion generated by *Gonzales*'s focus on governmental immunity, as opposed to the more basic problem of whether a duty was owed to the plaintiff in the first place, might have been avoided.[1]

The Supreme Court in *Davidson* was presented with a municipality's demurrer to a complaint alleging the negligent failure of police officers to protect the plaintiff. The complaint claimed reliance by the public based on the city's general provision of police services. In addition to asserting a statutory immunity, the demurrer challenged the allegation of the city's duty of care to the plaintiff.

The court dealt with the matter as follows: "In sorting out the issues presented, it is important to consider first things first. Conceptually, the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity. This logical sequence of inquiry was overlooked in dicta in at least three Court of Appeal cases [four counting *Gonzales*]: *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470]. The fallacy was exposed in *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 704 [141 Cal.Rptr. 189],[2] where Justice Reynoso, writing for the Court of Appeal, arrayed the subjects of the inquiry in proper order: 'The parties assume that if we conclude the alleged facts establish as a matter of law the existence of a "special relationship" (a relationship giving rise to the county's duty to act prudently, and appellants' justifiable reliance thereon) we will obviate the need to

---

[1] As one commentator noted, "[t]his interpretation of section 831.2 creates a serious dilemma for California coastal communities," e.g., the considerable possibility that its holding might discourage the deployment of public services. (Comment, *Surviving the "Chubasco": Liability of California Beach Communities for Natural Conditions of Unimproved Public Property* (1986) 23 San Diego L.Rev. 723, 725, 734-736.) Most appellate opinions discussing *Gonzales* have taken pains to distinguish it. (See, e.g., *Mercer* v. *State of California* (1987) 197 Cal.App.3d 158, 166-167 [242 Cal.Rptr. 701]; *McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981, 986-989 [235 Cal.Rptr. 732] [by the author of *Gonzales*]; *Winterburn* v. *City of Pomona* (1986) 186 Cal.App.3d 878, 882 [231 Cal.Rptr. 105]; *Kuykendall* v. *State of California* (1986) 178 Cal.App.3d 563, 566 [223 Cal.Rptr. 763]; *Rose* v. *County of Plumas* (1984) 152 Cal.App.3d 999, 1006-1007 [199 Cal.Rptr. 842].) One court has simply disagreed with the holding. (*Geffen* v. *County of Los Angeles* (1987) 197 Cal.App.3d 188, 192-193 [242 Cal.Rptr. 492].)

[2] The *Gonzales* opinion relied on *Hartzler* and *Antique Arts* to support its discussion of the duty issue under Government Code section 835 and seemingly questioned *Whitcombe*. (*Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at p. 890.) It also cited *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], but that case was subsequently disapproved. (*Clemente* v. *State of California* (1985) 40 Cal.3d 202, 212 [219 Cal.Rptr. 445, 707 P.2d 818]; *Williams* v. *State of California* (1983) 34 Cal.3d 18, 23-27 [192 Cal.Rptr. 233, 664 P.2d 137].)

consider whether respondents are immune from liability under sovereign immunity principles. Implicit in this exception theory is the assumption the "special relationship" creates an affirmative governmental responsibility which when breached gives rise to governmental liability notwithstanding the discretionary (immunized) character of the tortious act.' The *Whitcombe* court disagreed, correctly explaining that the question of ' "duty" [to which the special relationship concept pertains] is only a threshold issue, beyond which remain the immunity barriers . . . .' [Citation.]" (*Davidson v. City of Westminster, supra,* 32 Cal.3d at pp. 201-202.)[3] *Gonzales* missed that point.

As Professor Van Alstyne aptly noted, "Some of the cases represent an unnecessary effort to categorize the acts or omissions in question as immune discretionary functions, when the same result could be reached on the ground that the facts fail to show the existence of any duty owed to plaintiff . . . . [Citations.] Absence of duty is a particularly useful and conceptually more satisfactory rationale where, absent any 'special relationship' . . . the alleged tort consists merely in [government] nonfeasance. See, *e.g., Mikialian v. Los Angeles* (1978) 79 [Cal.App.3d] 150 [ ] (no duty of police to place flares for protection of tow truck operator); *J.A. Meyers & Co. v. Los Angeles County Probation Dep't.* (1978) 78 [Cal.App.3d] 309 [ ] (no duty of probation officers to disclose criminal record of probationer to prospective employer)." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.65, p. 146, quoted with approval in *Williams v. State of California, supra,* 34 Cal.3d at p. 23.) The Supreme Court has also explained, "legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

Thus, *Gonzales* should have resolved the duty question before addressing the asserted immunity[4] (*Forde v. County of Los Angeles* (1976) 64

---

[3] To be sure, a court may turn first to a statutory immunity where its application provides a clear bar rather than wrestle with a murky duty issue, "suggesting, perhaps, that the life of the law is not logic, but expedience." (*Kisbey v. State of California* (1984) 36 Cal.3d 415, 418 [204 Cal.Rptr. 428, 682 P.2d 1093], fn. omitted; *Ne Casek v. City of Los Angeles* (1965) 233 Cal.App.2d 131, 134 [43 Cal.Rptr. 294]; see also *Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 362 [257 Cal.Rptr. 356] [see fn. 5, *post* ]; *Geffen v. County of Los Angeles, supra,* 197 Cal.App.3d 188, 192-193 [disagreeing with *Gonzales* on the immunity question].)

[4] Government Code section 831.2 could perhaps be construed as merely a legislative declaration that no duty of care is owed to a plaintiff who might be injured by a natural condition on unimproved public property. The word "immunity" does not appear in that section, and its language sounds less like a description of excused negligence than a declaration of nonduty ("Neither a public entity nor a public employee is liable . . . .")

Cal.App.3d 477, 481 [134 Cal.Rptr. 549]); "the immunity cart [should not be] placed before the duty horse. [Citation.]" (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 22.) And, when it did reach the out-of-sequence duty question, the *Gonzales* court erred there as well.

## II

The *Gonzales* majority made a curious assumption, encouraged perhaps by the special posture of the proceeding, i.e., review of a demurrer in which the city apparently did not deny its alleged duty to the decedent: "[W]here a public entity voluntarily assumes a protective duty toward certain members of the public, even though there is no liability for its acts or omissions, upon undertaking the action on behalf of the public and inducing public reliance, the entity will be held to the same standard of care as a private individual or entity. (*Hartzler* v. *City of San Jose* [*supra*] 46 Cal.App.3d 6, 10 [120 Cal.Rptr. 5]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 780, fn. 6 [139 Cal.Rptr. 82].)" (*Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at p. 887.) Oddly, the notion that this statement of the law in some way related to the case before it was specifically, and quite properly, rejected when the court considered the duty issue subsequently.

The provision of services to the public in general, the basis of the duty allegations in the *Gonzales* complaint (and in this one as well), will not give rise to a duty by the government agency to act affirmatively to protect any individual plaintiff. Without active negligence toward, or some special rela-

---

The Senate Legislative Committee comments to section 831.2 state in part, "It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition *to assume the risk of injuries* arising therefrom as a part of the price to be paid for benefits received." (Italics added.)

Assumption of the risk is a concept relating to the relative duties of care of the plaintiff and defendant. (See, e.g., *Ordway* v. *Superior Court* (1988) 198 Cal.App.3d 98 [243 Cal.Rptr. 536]; *Rudnick* v. *Golden West Broadcasters* (1984) 156 Cal.App.3d 793 [202 Cal.Rptr. 900]; Frizell, *Assumption of the Risk in California: It's Time to Get Rid of It* (1989) 16 Western St.U. L.Rev. 627.) It is not a doctrine ordinarily associated with a grant of immunity. Immunity as a bar to recovery comes into play only after the defendant's fault has been determined to exist, i.e., that a duty of care has been breached. (See *Williams* v. *State of California, supra,* 34 Cal.3d 18, 22; *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, 201-202; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 704 [141 Cal.Rptr. 189].) Notwithstanding these comments, Government Code section 815 describes the various exceptions to liability as immunities; and the Supreme Court has echoed that theme. (*Milligan* v. *City of Laguna Beach* (1986) 34 Cal.3d 829, 832-833 [196 Cal.Rptr. 38, 670 P.2d 1121], citing the above quoted legislative comments to § 831.2.)

tionship with, a particular plaintiff, it is well settled that no duty to act springs from the mere establishment of governmental services. (See, e.g., *Clemente* v. *State of California, supra,* 40 Cal.3d 202; *Williams* v. *State of California, supra,* 34 Cal.3d 18; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425; *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; *Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070 [235 Cal.Rptr. 844]; *Hucko* v. *City of San Diego* (1986) 179 Cal.App.3d 520 [224 Cal.Rptr. 552]; *Harris* v. *Smith* (1984) 157 Cal.App.3d 100 [203 Cal.Rptr. 541]; *Stout* v. *City of Porterville* (1983) 148 Cal.App.3d 937 [196 Cal.Rptr. 301].)[5]

*Hartzler* v. *City of San Jose, supra,* 46 Cal.App.3d 6 and *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], the two cases *Gonzales* cites for the proposition that a governmental entity will be held to a standard of ordinary care once it acts on behalf of the public or induces public reliance, illustrate the false premise of the hybrid theory, i.e., that the mere furnishing of police and lifeguard services gives rise to a legal duty. Those cases did not find a duty to act based on the general provision of public services.

In *Hartzler* the city was not held liable. There, plaintiff's decedent was murdered when police failed to respond to a telephone report from the victim that her estranged husband announced he was on his way over to kill her. The establishment of a police department did not make the city legally responsible for its inaction, and a police history of responding to a score of similar calls from the victim did not create any special relationship with the municipality. The state was found responsible in *Mann*; but there an officer actively intervened at an accident scene, only to drive off, leaving victims who relied on his assistance in a hazardous position in the middle of a public highway.

The lesson of these cases and those cited previously is that the usual availability of public services is not sufficient, in and of itself, to induce

---

[5] Compare the facts in *Decker* v. *City of Imperial Beach, supra,* 209 Cal.App.3d 349, where there was a triable issue of fact as to whether the city had assumed responsibility for the rescue of plaintiff's decedent. In *Decker,* the victim went surfing one early March evening when lifeguards were not on duty. His surfboard leash became tangled in the tether for an underwater lobster trap. Bystanders called the sheriff's department, who notified the city fire department. Both agencies arrived at the beach and told the victim " 'help [was] on the way.' " (*Id.,* at p. 352.) The city's fire marshall, however, forbade a lifeguard from swimming into the surf to rescue the young man. Other efforts failed, and the surfer drowned.

The appellate panel bypassed the duty issue, and a majority affirmed a summary judgment for the city on the basis of a statutory immunity (Gov. Code, § 831.7 [hazardous recreational activity]). (See fn. 3, *ante,* p. 858.)

reasonable reliance in a particular plaintiff or to create liability for a failure to act. The Supreme Court has explained the point in these words: "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act. [Citations.]" (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 23.) The rationale is as follows: "This rule derives from the common law's distinction between misfeasance and non-feasance, and its reluctance to impose liability for the latter. [Citation.] Morally questionable, the rule owes its survival to 'the difficulties of setting any standards of unselfish service to fellow men, and of making any workable rule to cover possible situations where fifty people might fail to rescue . . . .' [Citation.] Because of these practical difficulties, the courts have increased the number of instances in which affirmative duties are imposed not by direct rejection of the common law rule, but by expanding the list of special relationships which will justify departure from that rule. [Citation.]" (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 435, fn. 5.) It may be that the ancient distinction between active and passive behavior in the law is past its prime. (See *Hucko* v. *City of San Diego, supra,* 179 Cal.App.3d at p. 524.) Nevertheless, the rule it supports is still controlling and not subject to change by an intermediate appellate court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Following an analysis of Government Code section 831.2, the *Gonzales* majority examined the duty question briefly in light of Government Code section 835. Inconsistently, however, the majority considered and rejected the same concept of duty it earlier used to explain the "hybrid" theory in the immunity discussion: "Although we agree with the legal theory set forth in the concurring opinion [that a duty to act may be predicated on the general provision of public services without active negligence toward a particular plaintiff or any special relationship], here the complaint presently lacks the necessary factual allegations explaining what employee's negligence and the nature thereof [ ] give rise to City's vicarious liability. Moreover, the complaint does not specifically allege facts giving rise to any special relationship between City and decedent. (See *Mann* v. *State of California, supra,* 70 Cal.App.3d 773, 779-780.)" (*Gonzales* v. *City of San Diego, supra,* 130 Cal.App.3d at p. 889.)

I do not understand use of the term "vicarious liability" in the context of *Gonzales,* a point that has confounded others as well. (See *Surviving the "Chubasco," supra,* 23 San Diego L.Rev. at pp. 733-734.) Still less do I understand the relevance of its earlier discussion of duty in the immunity analysis. The duty suggested in that portion of the opinion does not exist.

And, the statutory duty under Government Code section 835 utilized in the consideration of the duty question is certainly inapplicable when that provision is read alongside section 831.2.

Does a legal duty flow from a municipality's dual role as landowner and provider of general public services? The difficulties with that notion are several. For one, since public safety services of some sort are available virtually everywhere in the state, even in wilderness areas, that would be the equivalent of an open-ended application of the rule of *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561] and Government Code section 835 in contravention of both the spirit and the letter of section 831.2. Despite the obvious intent of the latter provision, under *Gonzales* a governmental entity would be required to warn of all hazardous natural conditions on its unimproved property so long as some public safety services were offered there. That is not the law. (See, e.g., *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d 988-989 [city not liable even though signs warning of dangerous cliffs and false trails were not lighted and were ineffectively located]; *County of Sacramento* v. *Superior Court* (1979) 89 Cal.App.3d 215 [152 Cal.Rptr. 391].) And if it were, as the Legislature feared in 1963, public lands might be withdrawn from public access in some cases and cause the proliferation of unsightly warning signs. (See *Hayes* v. *State of California* (1974) 11 Cal.3d 469, 473 [113 Cal.Rptr. 599, 521 P.2d 855]; *Surviving the "Chubasco," supra,* 23 San Diego L.Rev. at pp. 735-736.)

The government does not become a guarantor of public safety by providing certain services on unimproved property in its natural condition. If the property meets the definition of Government Code section 831.2, there is no duty to warn of all dangerous conditions merely because some warnings have been given or because certain safety services are in place for the general public's benefit. (See, e.g., *Mercer* v. *State of California, supra,* 197 Cal.App.3d at p. 169 ["Nothing in the record indicates (the public entity) voluntarily assumed the obligation to warn the public of the dangers . . . or otherwise by its conduct negligently increased the dangerousness of the dunes' natural condition. Nor has appellant offered any evidence that he was misled or given a false sense of security by (the public entity's) conduct"]; *McCauley* v. *City of San Diego, supra,* 190 Cal.App.3d at p. 992; *Winterburn* v. *City of Pomona, supra,* 186 Cal.App.3d at p. 882 [no duty to warn of danger of falling rocks in cave]; *Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789, 814 [198 Cal.Rptr. 208] [no duty to warn beachgoers of "possible unauthorized and/or criminal use of the beach"]; *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926 [125 Cal.Rptr. 586].) Only if a government employee negligently intervenes to a particular individual's disadvantage, or some special relationship exists between the

government and the injured party, does a duty exist. (Cf. *Decker* v. *City of Imperial Beach, supra,* 209 Cal.App.3d 349.)

On the other hand, the obligation of care arising from the ownership of public lands is strictly limited by Government Code section 831.2. At best the provision of services on public property should only impact the application of that section where those services, combined with physical improvements at the site of the accident, have become so pervasive and dominant that it can no longer be said the property remains "unimproved." Thus, the hybrid theory of *Gonzales* is both unsound and unnecessary. Where liability is grounded on active negligence or a special relationship, the character of the property as public or private is immaterial. When liability derives from the government's role as an owner of property, services offered on that property are only marginally relevant with respect to the determination of whether it remains unimproved for purposes of section 831.2. The alchemy of *Gonzales* was to create liability gold out of the mixture of two base elements: passive negligence and a dangerous condition on unimproved property. Neither could support a judgment alone. Nor can they together: Nothing added to nothing equals nothing. Put another way, *Gonzales* erred in combining a discussion of duty with a consideration of the immunity question and in failing to appreciate the inapplicability of Government Code section 835 in light of section 831.2.

As a matter of law, the City of Laguna Beach owed no duty to plaintiffs. Thus, under no theory could they recover. Summary judgment was appropriate.

A petition for a rehearing was denied September 29, 1989, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 21, 1989.